## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  _____

GENERAL STEEL DOMESTIC SALES, LLC, d/b/a
GENERAL STEEL CORPORATION, a Colorado limited liability company,

Plaintiff,

v.

ETHAN DANIEL CHUMLEY, individually; and
ATLANTIC BUILDING SYSTEMS, LLC, a Delaware corporation, doing business as
ARMSTRONG STEEL CORPORATION.

Defendants.

---

## COMPLAINT

---

Plaintiff General Steel Domestic Sales, LLC, d/b/a General Steel Corporation, a Colorado limited liability company ("General Steel"), by and through its undersigned counsel, for its Complaint against the above-named Defendants, states and alleges as follows:

## INTRODUCTION

Plaintiff General Steel sells pre-engineered steel buildings throughout the world.  General Steel's name is one of the most widely recognized names in the steel building business. General Steel has been in business in Colorado since 1995, and has sold many thousands of steel buildings and has spent tens of millions of dollars on its advertising and marketing.  This case is brought to stop a competitor and its principal (Defendants) from illegally using General Steel's name, marketing efforts, and good-will, in order to get business.  Defendants have focused their marketing efforts on using Google Sponsored Link ads containing General Steel's name to

redirect General Steel customers to their website. This case is also brought to also stop the

Defendants from continuing their false and misleading advertising and deceptive sales practices.

General Steel seeks damages and injunctive relief for the flagrant conduct of these Defendants.

## I.  PARTIES

1.       Plaintiff General Steel is a Colorado limited liability company having its principal

place of business located at 10639 Bradford Road, Littleton, Colorado 80127.  General Steel is

one of the nation's leading distributors of pre-fabricated steel buildings.

2.       Defendant Ethan Daniel Chumley ("Chumley") is a principal in Atlantic Building

Systems, LLC d/b/a Armstrong Steel Corporation whose principal place of business as identified

with the Colorado Secretary of State's office is 303 South Broadway, Denver, Colorado  80209.

Upon information and belief, Chumley resides at 2612 Gray Street, Wheat Ridge, Colorado

80214.

3.        Defendant Atlantic Building Systems d/b/a Armstrong Steel Corporation

("Armstrong") is a Delaware corporation whose principal place of business as identified with the

Colorado Secretary of State's office is 303 South Broadway, Denver, Colorado  80209.

Armstrong is a distributor of pre-fabricated steel buildings and a competitor of General Steel.

Upon information and belief, Armstrong's offices are located in Lakewood, Colorado.

## II.  JURISDICTION AND VENUE

4.       This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. §

1338(a) and (b).  By this action, General Steel asserts claims which arise under the Lanham Act,

common law trademark, and other related unfair competition claims and statutory Colorado

Consumer Protection Act claims.

5.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over

claims herein which are not based upon federal statute, since these claims are so related to claims

in this action that are within the Court's original jurisdiction that they form part of the same case

or controversy.

6.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and

1400(a) because the Defendants transact business, are subject to personal jurisdiction, and

therefore, reside or may be found in this judicial district.  In addition, certain of the acts of

infringement, tortious conduct, and other statutory violations claimed herein, which constitute a

substantial part of the events giving rise to Plaintiff's claims, occurred in this judicial district.

## III.  GENERAL ALLEGATIONS

A.    **The General Steel Trademark**

7.    General Steel has statutory and common law trademark rights in the words and

name General Steel.

8.    General Steel has applied for and obtained a Registered Federal Trademark with

the United States Patent and Trademark Office for the word mark "General Steel" used in

connection with its stylized logo.  The application was filed on May 18, 2001.  The Registration

Date is December 31, 2002.  The Serial Number is 76259450.  The Registration Number is

2668226.  A copy of General Steel's trademark, which includes the words and name General

Steel Corporation, is attached hereto as **Exhibit A**, and incorporated by reference herein.

9.    General Steel's federal trademark registration has a disclaimer that "no claim is

made to the exclusive right to use 'steel corporation' apart from the mark as shown.

10.    It has been determined, in a 2003 litigation case, that the words and name General

Steel are not merely descriptive or generic.  Rather, they are distinctive and have acquired

secondary meaning.  *General Steel Domestic Sales LLC d/b/a General Steel Corporation v. LR*

*Malinuwski,* National Arbitration Forum, Case No. 140653 (March 4, 2003).  Copy of March 4,

2003 Order attached hereto as **Exhibit B**.

11.    General Steel has adopted and affixed its trademark to each of its products.

12.    All aspects of the pre-fabricated steel buildings that General Steel sells throughout

the country are identified with the General Steel name and stylized logo.

13.    All of General Steel's building component parts have the General Steel name and

logo affixed to the steel.

14.    All of General Steel's building plans and documents bear the General Steel name

and logo.

15.    All of General Steel's marketing materials bear the General Steel name and logo.

16.    General Steel markets its name and its pre-fabricated building products to

millions of customers nationwide.  Since its inception in 1995, General Steel has spent well over

$50 million for advertising and marketing.  General Steel is the third most searched term in the

steel building industry.

17.    General Steel has advertised for many years on national radio and television

shows.  General Steel advertises on national radio shows such as <u>The Rush Limbaugh Show</u>,

<u>The Sean Hannity Show</u>, <u>Glen Beck Show</u>, <u>Mike Gallagher Show</u>, <u>Mike Savage Show</u>, <u>Mark

Levine Show</u>, <u>Fox News Radio</u>, and others.  This advertising has reached millions of people on a

weekly basis for many years.

18.    General Steel has sold many thousands of steel buildings throughout the United

States.

19.    Customers throughout the nation know the name General Steel and associate that

name with General Steel's pre-fabricated steel buildings.

20.    General Steel's name identifies and distinguishes its products, and identifies the

source of its products.

21.    General Steel has continuously used its name in interstate commerce since 1995.

22.    General Steel has continuously used it name on a nationwide basis, and has

achieved a national reputation.

23.    General Steel's name is distinctive.

24.    General Steel's name is suggestive.

25.    General Steel's name is descriptive and has acquired secondary meaning within

the steel building industry and the consuming public.

26.    General Steel is the owner of its trademark, including both its name and logo.

27.    General Steel is the senior user of its trademark, including both its name and logo.

28.    Armstrong and Chumley are competitors of General Steel.

29.    Armstrong's principal and owner, Chumley, is a former employee of General

Steel.

30.    Armstrong and Chumley are aware of General Steel's use of its name, General

Steel, and its distinctive and secondary meaning.

31.    Armstrong and Chumley have specifically recognized the secondary meaning,

distinctiveness and value of the name General Steel and have deliberately sought to exploit that

5

name to gain customers and profits for themselves which they could not otherwise obtain.

Absent such secondary meaning, they would not have attempted to so capitalize.

**B.**    **The Use of the Internet to Attract Customers**

32.    The Internet is a global network of interconnected computers which allow users around the world to communicate and share information.

33.    The Web is a collection of information resources contained in documents located on individual computers around the world.

34.    Google is the largest Internet search engine.  Google sells advertising in the form of Sponsored Links and/or Ad Words, whereby advertisers pay Google to list their business and Internet address or Uniform Resource Locator ("URL") on the right side or top of the results page obtained when an Internet user searches for a particular business.  Many people search for "General Steel" or "General Steel Buildings" on the Internet, and therefore competitors often pay Google to have their business listed as a Sponsored Link so that when someone searches for General Steel, their business name will appear as a Sponsored Link on the right side or top of the search results page.

**C.**    **Defendants' Improper Use of "General Steel" in its Google Sponsored Link Advertising**

35.    In late December 2009, General Steel learned that Defendants were improperly using the keywords General Steel Buildings and other derivations thereof in their paid Google Sponsored Link ads.

36.    For example, Defendants have used the term "General Steel Buildings" in their banner/top of the page Sponsored Link ad to redirect customers searching for General Steel to the Defendants' website at www.armstrongsteelbuildings.com .   Attached hereto as **Exhibit C**

6

and and incorporated by reference herein are screen prints of Google searches for "General Steel" on December 22, 2009, February 27, 2010, and June 4, 2010 showing the use by Defendants of "General Steel Buildings" in their Google Sponsored Link ads.

37.     Chumley and Armstrong have focused their marketing on using General Steel's well-established name to redirect General Steel customers and potential customers who are searching the internet for General Steel to Armstrong.

38.     In late April 2010, Armstrong's General Manager named John contacted General Steel's President and wanted to meet concerning information that he about Armstrong's business practices.  On May 4, 2010, General Steel's President, Jeffrey Knight, and General Steel's Vice-President, Nathan Wright, met with John as he had requested.

39.     Armstrong's General Manager John (hereinafter "John") revealed to Knight and Wright that: Armstrong and Chumley owed him money and were not paying him; he was ending his employment with Armstrong; and he had significant information that he wanted to disclose to Knight and Wright about Armstrong's sales practices targeted at stealing General Steel's business and also concerning how Armstrong misled its customers through the use of deceptive sales scripts.

40.     John revealed to Knight and Wright that when people contact Armstrong about a steel building purchase, Armstrong uses a deceptive sales pitch in order to dupe these customers into buying a steel building.  John disclosed to Knight and Wright the illegal sales scripts that Armstrong uses to deceive its customers.  John offered to sell the scripts to General Steel to use as evidence against Armstrong, but General Steel was not interested in paying him.

41.     John further disclosed that Armstrong is getting most of its sales leads and sales from its use of General Steel's name in its paid Google ads.  John revealed to Knight and Wright that Armstrong's internal record-keeping practices track the sales obtained by redirecting Web users to Armstrong using the above-described Sponsored Link ads.  Further, John told Knight and Wright that Chumley had blocked the illegal Google ads that Armstrong uses from appearing in Colorado in his effort to avoid detection by General Steel.

42.     John further disclosed that Armstrong had been using both General Steel's name and the name of another well-known steel building company, Olympia Steel, in its ads in order to attract customers.  John informed Knight and Wright that Chumley and Armstrong had received cease and desist letters from General Steel and Olympia, and that Armstrong had agreed to cease and desist from using Olympia's name because Armstrong was not getting enough business from using Olympia's name.

43.     In contrast, John disclosed to Knight and Wright that Chumley and Armstrong had decided not to cease and desist from using General Steel's name because they were getting so much of their business from using General Steel's name that they would continue infringing on General Steel's name and pay their lawyers to fight General Steel.  According to John, Chumley decided that he was making enough money from illegally using General Steel's name to make it worth it to him to continue doing so even if sued by General Steel.  According to John, Chumley budgeted $100,000 for legal fees to defend a lawsuit that he expected General Steel to bring.

44.     As a direct result of the improper use of General Steel's name by Armstrong and Chumley in their Internet advertising, Defendants have misleadingly used General Steel's name

in their ads in order to redirect potential customers of General Steel who were looking for General Steel on the internet.  Defendants are improperly and illegally gaining the benefit of General Steel's name, advertising expenditures, and good-will in order to steal General Steel's business.

45.    The use by Armstrong and Chumley of the term "general steel buildings" in their advertising is deceptive and misleading, and unlawfully diverts customers of General Steel to their web site.

46.    The use by Armstrong and Chumley of "general steel buildings" in their Internet advertising impermissibly trades upon the goodwill that General Steel has created in its mark, and has generated initial interest confusion among customers.

47.    The use by Armstrong and Chumley of the term "general steel buildings" in their Internet advertising is likely to cause confusion, mistake or deception as to the source, sponsorship, or approval of those companies' products in that consumers are likely to erroneously believe that these Defendants are in some way legitimately connected with, sponsored by, licensed by, or otherwise related to General Steel.

48.    The use by Armstrong and Chumley "general steel buildings" in their Internet advertising unlawfully dilutes the distinctive quality of the General Steel mark.

49.    The use by Armstrong and Chumley of the term "general steel buildings" in their Internet advertising constitutes a deceptive trade practice under Colorado law.

50.    Defendants continue to mislead the public and engage in false advertising.  On their website, Defendants have continually misrepresented the following material information:

- "We are America's leading steel building provider"

- "Armstrong, the leading steel metal [sic] building provider"

- "We are one of the largest pre-engineered steel building manufacturers in North America"

- "Armstrong Steel, the leader in metal building and steel metal [sic] buildings"

- "Being one of the leading providers of prefabricated metal buildings, we have the expertise in providing turnkey metal building solutions to our clients"

- "Armstrong Steel has years of experience in helping businesses and churches to construct commercial steel building facilities"

- "has earned their longstanding reputation"

- "each piece of steel we fabricate" [Armstrong is simply a reseller who, upon information and belief, was incorporated in 2007and has no fabrication or design facilities of its own]

- Armstrong's "list of steel church building construction projects is so long"

- "our design team consists of steel building professionals, construction experts, and estimators to meet all your metal building construction needs"

- "Our complex metal building inventory systems"

- "Our onsite, environmentally controlled painting facility"

- "Our facilities utilize laser precision engineering"

These representations on Defendants' website are false and misleading. For example, Armstrong has been in business for approximately three years, and, upon information and belief, is a very small reseller of steel buildings, certainly not the largest or one of the largest in the country.

Indeed, calls to Armstrong's 800 number often ring through to the personal cell phone voice mail for a woman named "Nicole Bullock."

**D.** **Damages**

51.     As a direct and proximate result of the wrongful conduct described herein, General Steel has incurred, and will continue to incur, *inter alia*, the following loss or damages:

　　　　a.     instances of actual confusion of customers as to the source and origin of its competitors' products; and

　　　　b.     losses of sales and lost profits in an amount to be proven at trial.

52.     In addition, as a direct and proximate result of the wrongful conduct described herein, Armstrong and Chumley have been unjustly enriched by the amount of their gross profits and cost savings (including advertising) that they have received by their unauthorized exploitation of the name, reputation, and goodwill of General Steel.

53.     By their acts and conduct described herein, Armstrong and Chumley have deliberately sought to interfere with and disrupt General Steel's business and intentionally lure General Steel's potential customers to their own web site. The wrongful conduct of Armstrong and Chumley described herein was attended by circumstances of fraud, malice, willful and wanton behavior, and bad faith.

54.     The acts and conduct described herein have occurred throughout the United States, including Colorado. The impact of Defendants' violations and infringements on General Steel's business have been sustained in Colorado.

## FIRST CLAIM FOR RELIEF

### (Trademark Infringement under Lanham Act)

55.    General Steel realleges and incorporates herein the allegations contained in
paragraphs 1 through 54 above.

56.    General Steel is the owner of the General Steel trademark.

57.    Defendants have used the words or names "General Steel," "General Steel
Buildings" and/or other derivations thereof in their Internet advertising in an intentional and
deliberate effort to lure potential customers and leads of General Steel to their own web sites.

58.    Defendants have purchased "Sponsored Links" and/or "Ad Words" from Google
so that when people search the internet for the terms "General Steel" or "General Steel
Buildings" a link to Defendants' website appears on the page seeking to have the person
searching for General Steel view Defendants' ad and go to Defendants' website.  The content of
Defendants' Sponsored Link ads contain the terms "General Steel Buildings"and derivations
thereof in a further effort to have people looking for General Steel go to Defendants' website
because they may believe that Defendants' website is related to General Steel or that Defendants
sell General Steel buildings.

59.    The Defendants' use of the words or names "general steel," "general steel
building" and/or other derivations thereof are likely to cause, and have caused confusion, mistake
and/or deception within the steel building industry and the consuming public as to the source,
sponsorship or approval of Defendant's product in that consumers are likely to erroneously
believe that the Defendants are in some way legitimately connected with, sponsored, licensed by,

or otherwise related to General Steel in violation of the Lanham Act, 15 U.S.C. § 1114(1) and 1125(a).

60.      The Defendants' use of the words or names "general steel," "general steel buildings," and/or other derivations thereof, unlawfully dilute the distinctive quality of the General Steel mark in violation of the Federal Trademark Dilution Act of 1995, Section 43(c) of the Lanham Act.  15 U.S.C. § 1125(c).

61.      The Defendants have used the words or names "general steel" or "general steel buildings," or other derivations thereof, with knowledge of General Steel's senior use.

62.      The acts and conduct of Defendants constitute infringements of the trademarks of General Steel.

63.      Defendants have committed willful and deliberate infringements of General Steel's trademark.

64.      Defendants knew that the above acts and conduct constituted infringements of General Steel's trademark.

65.      Despite such knowledge, Defendants have continued to infringe General Steel's trademark.

66.      As a direct and proximate result of the infringements of General Steel's trademark, General Steel has sustained and is entitled to an award of actual, special, consequential and unjust enrichment/restitutionary damages, including lost profits and/or reasonable royalties.  Said amounts will be proven at trial.

67.      General Steel is also entitled to:

a.   temporary and/or final injunctions to restrain further infringements of its trademark pursuant to 15 U.S.C. § 1116;

b.   disgorgement of profits pursuant to 15 U.S.C. § 1117;

c.   treble damages pursuant to U.S.C. § 1117;

d.   attorneys' fees and costs pursuant to 15 U.S.C. § 1117; and

f.   punitive damages.

## SECOND CLAIM FOR RELIEF

### (False Advertising Under Lanham Act)

68.   General Steel realleges and incorporates herein the allegations contained in paragraphs 1 through 67 above.

69.   Defendants have made false or misleading descriptions of fact or false or representations of fact in their commercial advertising about their products or services as described above including but not limited to the allegations of paragraph 50 above.

70.   The misrepresentations are material, in that they are likely to influence the purchasing decision.

71.   The misrepresentations actually deceive or have the tendency to deceive a substantial segment of the audience.

72.   The Defendants have placed the false or misleading statements in interstate commerce in connection with the sale of their goods or services.

73.   The Plaintiff has been and is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

74.     The acts and conduct of Defendants, as described above, constitute false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

75.     As a direct and proximate result, General Steel has sustained damages and is entitled to an award of actual, special, consequential and unjust enrichment/restitutionary damages.  Said amounts will be proven at trial.

76.     General Steel is also entitled to temporary and/or final injunctions to prevent or restrain further violations.

## THIRD CLAIM FOR RELIEF

### (Deceptive Trade Practices – Violation of Colorado Consumer Protection Act)

77.     General Steel realleges and incorporates herein the allegations contained in paragraphs 1 through 76 above.

78.     Defendants have engaged in deceptive trade practices within the meaning of C.R.S. § 6-1-105 and other applicable statutes, including  knowingly making false representations on their website as the size and nature of their business by falsely representing their business as set forth in detail in paragraph 50 above.

79.     Defendants misrepresent to the public, *inter alia*, that they: "are America's leading steel building provider"; "are one of the largest pre-engineered steel building manufacturers in North America" and that they have facilities, engineers, and construction professionals of their own.  Rather, they are a reseller at best and have no facilities or professionals.  For example, in a May 27, 2010 press release on PR Newswire, Defendants state that "Armstrong Steel Continues to Dominate the U.S. Metal Building Industry" and then they

tell the public that they are "postponing international deliveries" to meet their rising U.S. demand for steel buildings.

80.     Defendants' campaign of false and deceptive advertising is designed to have the public believe that they are a major steel building company when in fact they probably have never made a single international sale and according to John, sell in the range of 5-10 buildings per month.  They are certainly not America's leading steel building provider or one of the largest.  If anything, they are one of the smallest.   Defendants' misrepresentations compound customer confusion with General Steel's trademark because General Steel is in fact one of the nation's largest steel building providers.

81.     Contrary to the representations made by Defendants on their website and elsewhere,  Defendants, have no production facilities of their own, have no painting facilities, have no design team, no construction experts, and no "facilities" other than perhaps one or two people answering the telephone.

82.     The above-described false representations constitute, *inter alia*, violations of C.R.S. § 6-1-105(1)(a) (Knowingly passes off goods, services, or property as those of another); C.R.S. § 6-1-105(1)(e) (Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith); C.R.S. § 6-1-105(1)(u) (Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction).

83.      In addition, pursuant to C.R.S. §§ 6-1-105(1)(a) and (c), by using the terms "General Steel" and "General Steel Buildings" in their ads, Defendants have been knowingly passing off the goods and services of another as their own and knowingly making a false representation as to affiliation, connection, or association with or certification by another.

84.      The above-described acts and conduct of Defendants have a significant public impact because the misrepresentations are made uniformly to the public at large to induce them to purchase steel buildings from Defendants.

85.      The above-described acts and conduct of Defendants have injured General Steel.

86.      As a direct and proximate result of such acts and conduct, General Steel has sustained damages and is entitled to an award of actual, special, consequential and unjust enrichment/restitutionary damages.  Said amounts will be proven at trial.

87.      Pursuant to C.R.S. § 6-1-113(2)(a)(III), General Steel is entitled to an award of treble damages.

88.      Pursuant to C.R.S. § 6-1-113(2)(b), General Steel is entitled to an award of costs and reasonable attorneys' fees.

## FOURTH CLAIM FOR RELIEF

### (Federal Unfair Competition)

89.      General Steel realleges and incorporates herein the allegations contained in paragraphs 1 through 88 above.

90.      The words and name "General Steel" are distinctive and have acquired secondary meaning.

91.     Defendants have knowingly and fraudulently used General Steel's name to lure General Steel's leads and potential customers to their web sites.

92.     Defendants have intentionally, willfully and maliciously attempted, through their improper use of the words or names "general steel," "general steel buildings," or other deviations thereof in their internet advertising, traded upon the goodwill and reputation of General Steel in such a way to divert sales and dilute the reputation and renown of General Steel.

93.     The acts and conduct of Defendants, as described above, constitute unfair competition and false designations of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a).

94.     As a direct and proximate result, General Steel has sustained damages and is entitled to an award of actual, special, consequential and unjust enrichment/restitutionary damages.  Said amounts will be proven at trial.

95.     General Steel is also entitled to temporary and/or final injunctions to prevent or restrain further violations.

### FIFTH CLAIM FOR RELIEF

### (Common Law Unfair Competition)

96.     General Steel realleges and incorporates herein the allegations contained in paragraphs 1 through 95 above.

97.     The acts and conduct of Defendants, as described above, constitute willful unfair competition under applicable common law.

98.     As a direct and proximate result of such acts and conduct, General Steel has sustained damages and is entitled to an award of actual, special, consequential, and punitive, and unjust enrichment/restitutionary damages.   Said amount will be proven at trial.

**SIXTH CLAIM FOR RELIEF**

**(Conversion)**

99.      General Steel realleges and incorporates herein the allegations set forth in paragraphs 1 through 98 above.

100.      By their acts and conduct described above, Defendants have exercised unlawful dominion and control over General Steel's intellectual and other property.

101.      As a direct and proximate result of Defendants' conversion of General Steel's property, General Steel has sustained and is entitled to an award of actual, special, consequential and unjust enrichment/restitutionary damages.  Said amounts will be proven at trial.

102.      In addition, Atlantic d/b/a Armstrong and Chumley's conduct was attended by circumstances of fraud, malice and willful and wanton behavior.  As a result, General Steel is entitled to an award of punitive damages, and will seek leave to obtain punitive damages.

**SEVENTH CLAIM FOR RELIEF**

**(Unjust Enrichment)**

103.      General Steel realleges and incorporates herein the allegations set forth in paragraphs 1 through 102 above.

104.      As a result of their acts, conduct and omissions described herein, Defendants have been unjustly enriched at General Steel's expense.

105.      Under the circumstances described herein, it would be unfair to allow Defendants to profit from their wrongdoing.

106.      Under the circumstances described herein, it would be unfair to allow Defendants to retain their economic benefits without paying for them.

107.    As a direct and proximate result of the unjust enrichment of Defendants, General Steel is entitled to an award of restitutionary damages.  Said amounts will be proven at trial.

## EIGHTH CLAIM FOR RELIEF

### (Injunction)

108.    General Steel realleges and incorporates herein the allegations set forth in paragraphs 1 through 107 above.

109.    Defendants do not hold any right or license to use General Steel's name to generate customers, or for any other purpose.

110.    Defendants must be enjoined from their false advertising and deceptive trade practices as described above.

111.    Accordingly, General Steel is entitled to a preliminary and/or permanent injunction prohibiting Defendants from engaging in any such acts or conduct described above.

## NINTH CLAIM FOR RELIEF

### (Constructive Trust/Equitable Lien)

112.    General Steel realleges and incorporates herein the allegations contained in paragraphs 1 through 111 above.

113.    Defendants are unfairly using General Steel's name, reputation and goodwill for their own financial gain.

114.    Defendants have unjustly enriched themselves and will continue to unjustly enrich themselves at General Steel's expense.

107.    It is against equity for Defendants to continue to retain, possess, and use any profits or proceeds from its wrongdoing.

108.    There exist grounds for imposition of a constructive trust on proceeds, net of operating expenses, derived by Defendants from their continued use of General Steel's name, reputation and goodwill.

109.    General Steel is entitled to an order requiring Defendants to disgorge to General Steel all proceeds, net of operating expenses, which they have derived and will continue to derive from their continued use of General Steel's name, reputation and goodwill.

## TENTH CLAIM FOR RELIEF

### (Accounting)

110.    General Steel realleges and incorporates herein the allegations contained in paragraphs 1 through 109 above.

111.    Pursuant to law and equity, General Steel is entitled to an accounting of all revenues, expenses and income derived by Defendants during the past three years.

112.    General Steel is also entitled to an accounting of all paid placement services or other sources from whom Defendants have purchased key words, or who have otherwise provided assistance in the development of their web sites and with their marketing.

## PRAYER FOR RELIEF

WHEREFORE, General Steel prays for the following relief:

A.    <u>Trademark Infringement</u>.  On its First Claim for Relief:

1.    A permanent injunction enjoining Defendants, their agents, servants, employees, franchisees, representatives, successors, assignees, and those in privity from using the words or names "General Steel" or "General Steel Buildings", or any other words or names

that are confusingly similar to General Steel in their internet or other advertising or marketing, or for any other purpose.

2.    A Court Order that said Defendants file with the Court, and serve on General Steel within ten (10) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which said Defendants have complied with the injunction.

3.    Actual, consequential, special, and unjust enrichment/restitutionary damages, lost profits, reasonable royalties, and other monetary relief in an amount to be proven at trial.

4.    Disgorgement of profits.

5.    Treble damages.

6.    Prejudgment interest.

7.    Attorneys' fees and costs.

8.    Punitive damages will be sought after obtaining leave of Court.

9.    Such other and further relief as the Court deems just and equitable under the circumstances.

B.    <u>False Advertising</u>.    On its Second Claim for Relief:

1.    A permanent injunction enjoining Defendants, their agents, servants, employees, franchisees, representatives, successors, assignees, and those in privity from using of the false advertising described in the Second Claim for Relief.

2.    A Court Order that said Defendants file with the Court, and serve on General Steel within ten (10) days after service of the injunction, a report in writing, under oath,

setting forth in detail the manner and form in which said Defendants have complied with the injunction.

    3. Actual, consequential, special, and unjust enrichment/restitutionary damages, lost profits, reasonable royalties, and other monetary relief in an amount to be proven at trial.

    4. Disgorgement of profits.

    5. Treble damages.

    6. Prejudgment interest.

    7. Attorneys' fees and costs.

    8. Punitive damages will be sought after obtaining leave of Court.

    9. Such other and further relief as the Court deems just and equitable under the circumstances.

    C. <u>Deceptive Trade Practices</u>.  On its Third Claim for Relief:

    1. As a direct and proximate result of such acts and conduct, General Steel has sustained damages and is entitled to an award of actual damages.

    2. Pursuant to C.R.S. § 6-1-113(2)(a)(III), General Steel is entitled to an award of treble damages.

    3. Pursuant to C.R.S. § 6-1-113(2)(b), General Steel is entitled to an award of costs and reasonable attorneys' fees.

    4. Pre-judgment interest.

    5. Such other and further relief as the Court deems just and equitable under the circumstances.

D.    <u>Unfair Competition</u>.  On its Fourth and Fifth Claims for Relief:

1.    A permanent injunction enjoining Defendants, their agents, servants, employees, franchisees, representatives, successors, assignees, and those in privity, from using the words or name "General Steel" or General Steel Buildings," or any other words or name that are confusingly similar to "General Steel" in their internet or other advertising or marketing, or for any other purpose.

2.    A Court Order that said Defendant file with the Court, and serve on General Steel within ten (10) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which said Defendants have complied with the injunction.

3.    Actual, consequential, special, and unjust enrichment/restitutionary damages, lost profits, and other monetary relief in an amount to be proven at trial, said amount to be trebled as a result of the exceptional nature of this case.

4.    An accounting and disgorgement of Defendants' profits.

5.    Treble damages.

6.    Punitive damages will be sought after obtaining leave of court.

7.    Prejudgment interest.

8.    Attorneys' fees and costs.

9.    Such other and further relief as the Court deems just and equitable under the circumstances.

D.     Conversion.  On its Sixth Claim for Relief, is entitled to an award of actual, special, consequential and unjust enrichment/restitutionary damages and an award of punitive damages when such damages are authorized by the Court.

E.     Unjust Enrichment.  On its Seventh Claim for Relief, is entitled to an award of restitutionary damages.

F.     Injunction.   On its Eighth Claim for Relief, preliminary and/or permanent injunctive relief as the Court may deem appropriate, including the injunctive relief identified in paragraphs A through E above.

G.     Constructive Trust.   On its Ninth Claim for Relief, imposition of a constructive trust and/or equitable lien on all revenues and proceeds, net of operating expenses, generated by Defendants  as a result of their acts and conduct described herein, and the entry of an order of disgorgement requiring the delivery of such proceeds to General Steel.

H.     Accounting.   On its Tenth Claim for Relief, an accounting as to all revenues, expenses and income derived by Defendants as the result of their acts and conduct described herein; and the entry of an order of disgorgement requiring the delivery of such proceeds to General Steel

I.     All other and further relief as this Court deems just, proper or appropriate.

DATED:  June 11, 2010                    Respectfully Submitted,

                                         /s/  David S. Fein                
                                         David S. Fein
                                         Patrick Frye
                                         Building Services Group, LLC Legal Department
                                         8321 S. Sangre De Cristo, Suite 300
                                         Littleton, CO 80127

                                         Attorneys for Plaintiff General Steel Corporation