IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-01398-PAB-KLM

GENERAL STEEL DOMESTIC SALES, LLC,
d/b/a General Steel Corporation, a Colorado limited liability company,

    Plaintiff,

v.

ETHAN DANIEL CHUMLEY, individually, and
ATLANTIC BUILDING SYSTEMS, LLC, a Delaware corporation,
doing business as Armstrong Steel Corporation,

    Defendants.

---

**ORDER**

---

This matter is before the Court on plaintiff's Motion Under Federal Rule of Civil Procedure 12 to Dismiss, to Strike, and for a More Definite Statement [Docket No. 24]. Plaintiff filed the motion in response to the Answer to Amended Complaint and Counterclaims of Defendants [Docket No. 23]. The motion is fully briefed and ripe for disposition.

**I. BACKGROUND**[1]

For several years, defendant Ethan Daniel Chumley worked for General Steel Domestic Sales, LLC, doing business as General Steel Corporation ("General Steel"). Upon leaving, Chumley worked for Olympia Steel, a competitor of General Steel. He then formed Atlantic Building Systems, LLC, doing business as Armstrong Steel

---

[1]The following facts are drawn from the counterclaims.

Corporation ("Armstrong"), which sells pre-engineered steel metal buildings throughout the world in competition with General Steel and Olympia. General Steel initiated this trademark and unfair competition action on June 16, 2010.

Armstrong has filed counterclaims, alleging that General Steel has made disparaging comments about Armstrong to customers and potential customers of Armstrong, including that "Armstrong does not have proper facilities; that it consists of one or two individuals; that those individuals were fired from General Steel for committing fraud against customers; that Armstrong would take the customers [sic] money and not deliver the building ordered; and that Armstrong Steel would soon be out of business." Docket No. 23 at 19-20, ¶ 18. Armstrong further alleges that, during a May 4, 2010 meeting, General Steel wrongfully received confidential information about Armstrong from Jon Abbotts, an Armstrong employee, and used that information to aid in its efforts to disparage Armstrong. Armstrong contends that the disparagement has resulted in lost profits and goodwill.

## II. STANDARD OF REVIEW

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's Complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted). In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation marks and citation omitted). At

the same time, however, a court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (omission marks, internal quotation marks, and citation omitted). The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009) (internal quotation marks and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (quotation marks and citation omitted).

The motion also invokes Federal Rule of Civil Procedure 9. In particular, Rule 9(b) requires that fraud-based claims be pled with particularity. *See* Fed. R. Civ. P. 9(b), providing in pertinent part that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See id.* Furthermore, General Steel also relies upon Rule 9(g), which requires that, "[i]f an item

of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. 9(g).

## III. DISCUSSION

Armstrong asserts six counterclaims arising out of Colorado law against General Steel: (1) commercial disparagement, (2) deceptive trade practices, (3) tortious interference with prospective business advantage, (4) civil conspiracy, (5) unfair competition, and (6) unjust enrichment. Armstrong requests, *inter alia*, an award of punitive damages against General Steel. In its motion, General Steel seeks dismissal of defendants' first, third, and fourth counterclaims and for the Court to strike defendants' second counterclaim and request for punitive damages.

### A. Commercial Disparagement

Armstrong does not dispute General Steel's contention that, pursuant to Colorado law, a "commercial disparagement" claim comprises the following elements: "(1) a false statement; (2) published to a third party; (3) derogatory to the plaintiff's business in general, to the title to his property, or its quality; (4) through which the defendant intended to cause harm to the plaintiff's pecuniary interest, or either recognized or should have recognized that it was likely to do so; (5) with malice; (6) thus, causing special damages." *Teilhaber Manufacturing Co. v. Unarco Materials Storage*, 791 P.2d 1164, 1166 (Colo. App. 1989) (adopting Restatement (Second) of Torts §§ 623(A) and 624 (1976)). General Steel requests dismissal of this counterclaim on the ground that Armstrong failed to plead special damages with adequate specificity.

Under Colorado law, "[i]f a plaintiff cannot show special damages, no cause of action is established." *Teilhaber*, 791 P.2d at 1167. "To make the required showing, a

plaintiff usually must identify those persons who refuse to purchase his product because of the disparagement." *Id.* However, "[i]f it is not a practical possibility to show specific losses, damages may then be proved by evidence similar to that used to prove lost profits resulting from a breach of contract." *id.* at 1168. Furthermore, federal procedural law requires that special damages be pled with specificity. *See* Fed. R. Civ. P. 9(g); *Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1266 (10th Cir. 2007) ("Special damages depend on particular circumstances of the case; general damages, on the other hand, are the ordinary result of the conduct alleged.") (5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1310 (3d ed.2005)).

In regard to its damages, Armstrong alleges that "one or more customers . . . breach[ed] their agreement with Armstrong or [chose to] forego business associations with Armstrong because of General Steel's disparaging comments," thus "caus[ing] Armstrong to lose significant business and be damaged . . . ." Docket No. 23 at 21, ¶¶ 24-25. Furthermore, Armstrong avers that, "[b]y disparaging Armstrong with false statements concerning its business[,] General Steel has made sales it would not otherwise have made and caused harm to Armstrong's reputation." Docket No. 23 at 21, ¶ 27; *see* Docket No. 23 at 22, ¶ 33 ("Upon information and belief[,] Armstrong has lost sales and the attendant profits as a direct and proximate result of General Steel's conduct as describe[d] above.").

Armstrong has not identified customers lost on account of the business disparagement. Nor has it specifically pled the lost profits it has suffered. Rather, it merely alleges in a conclusory fashion that it has suffered that category of damages.

The Court finds that Armstrong has insufficiently pled special damages as a matter of both Colorado substantive law and Rule 9(g).  *See* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1310 (3d ed. 2004) (stating that, when "as a matter of substantive law recovery is impossible without demonstrating that the plaintiff sustained such damages," "[t]o some degree . . . Rule 9(g) demands more by way of a statement of this aspect of the claim than is required by Rule 8(a)(2).").[2]  While Armstrong may not need to plead the precise dollar amount of its losses, *see id.*, or necessarily identify the particular customers lost, the Court concludes that it must at least allege "facts showing an established business and the amount of sales before and after the disparaging publication, along with evidence of causation."  *Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002) (stating such as an alternative to "identifying

---

[2]*Cf. National Numismatic Certification, LLC. v. 1. eBay, Inc.*, 2008 WL 2704404, at *20 (M.D. Fla. July 8, 2008) (footnotes omitted):
> Plaintiffs stress that at least one judge in this district has held that the requirement of pleading special damages is subject to the general pleading requirements of Federal Rule of Civil Procedure 8(a) and not Rule 9(g). *See Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1344-45 (M.D. Fla. 2003).  In that case, the Court described the history of "special damages" in the law of defamation and concluded that the term relates to the "cause of action for actual loss" and not "the remedy of damages."  *Id.* at 1343.  Because the purpose of Rule 9(b) was limited to "giving proper notice of certain types of damage," the Court concluded, it did not warrant specificity in pleading special damages as part of a trade libel claim in Federal Court.  *Id.* at 1345.
>
> To the contrary, Florida law requires a trade libel plaintiff to prove special damages as part of his or her claim, and Rule 9(g) unequivocally states that "[i]f an item of special damage is claimed, it must be specifically stated."  Even if *Leavitt* correctly describes the purpose behind Rule 9(g), it is impossible to ignore that the plain language of the Rule squarely encompasses one of the elements of establishing a trade libel claim.  Accordingly, Rule 9(g) requires Plaintiffs to plead special damages with specificity.

. . . particular customers whose business has been lost" as a means of complying with Rule 9(g)); *cf. Teilhaber*, 791 P.2d at 1168 ("If it is not a practical possibility to show specific losses, damages may then be proved by evidence similar to that used to prove lost profits resulting from a breach of contract.").[3]

Armstrong has not asserted facts that make that showing nor has it identified any reason why, if it suffered such a loss, it would be impracticable for it to plead such facts. Armstrong contends that, until discovery is conducted, it cannot determine the "number of statements, to whom they were made and when, and the full breadth of the disparagement." Docket No. 31 at 5. In order to plead the counterclaim at all, however, Armstrong must be aware of at least some disparaging statements. Moreover, it fails to explain why discovery is required for it to obtain information regarding its own sales.[4] To plead special damages in this "disfavored cause[] of action," Wright & Miller, *supra*, at § 1310, Armstrong must allege that information within its control. Because Armstrong has failed to allege any such facts, the Court finds that its counterclaim for commercial disparagement must be dismissed.

---

[3] Armstrong points out that the *Teilhaber* decision resolved the issue of proof at trial rather than sufficiency of pleading. However, the *Teilhaber* court relied upon *Ratcliffe v. Evans*, 2 Q.B. 524 (C.A. 1892) as "one of the first opinions to reject the strict approach" to special damages. *See Teilhaber*, 791 P.2d at 1167-68. In *Ratcliffe*, as quoted by the *Teilhaber* court, the court stated that "[a]s much certainty and particularity must be insisted on, both *in pleading* and proof of damages, as is reasonable . . . ." (emphasis added).

[4] In fact, in support of its claim for tortious interference with prospective business advantage, Armstrong alleges that "General Steel's wrongful conduct," i.e., disparaging statements, "has actually induced third parties to breach their sales agreements with Armstrong." Docket No. 23 at 24, ¶ 45. To the extent there is a factual basis for such an allegation, Armstrong should be able to identify at least some of the customers it lost.

### B. Deceptive Trade Practices

General Steel argues that Armstrong failed to adequately plead its second counterclaim for deceptive trade practices. General Steel, however, requests that the Court "strike" Armstrong's deceptive trade practices counterclaim pursuant to Rule 12(f) because it expects that the Court will grant Armstrong leave to "re-plead" the counterclaim. Rule 12(f) provides the Court with the authority to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." General Steel does not explain, nor does the Court see, how Rule 12(f) applies to its arguments regarding Armstrong's deceptive trade practices claim. Therefore, the Court construes General Steel's arguments as a request that the deceptive trade practices counterclaim be dismissed.

Armstrong's deceptive trade practices claim arises under the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-101, *et seq.* See Docket No. 23 at 23, ¶ 36. "[T]he CCPA works to deter and punish businesses for consumer fraud." *HealthONE of Denver, Inc. v. UnitedHealth Group Inc.*, No. 10–cv–01633–WYD–BNB, 2011 WL 1135015, at *3 (D. Colo. March 28, 2011) (citing *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003)). A CCPA cause of action consists of the following elements: "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally

protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Rhino Linings*, 62 P.3d at 146-47.

As General Steel points out and Armstrong admits, claims related to false representations allegedly made in violation of the CCPA must be pled with particularity pursuant to Fed. R. Civ. P. 9(b). *See Cavitat Med. Techs., Inc. v. Aetna, Inc.*, No. 04-cv-01849, 2006 WL 218018, at *3 (D. Colo. Jan. 27, 2006); *Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985). The Tenth Circuit "requires a complaint alleging fraud to 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (citing *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)).[5]

Armstrong attempts to plead the first element of a CCPA claim by alleging that General Steel told Armstrong's customers and potential customers that "Armstrong does not have proper facilities; that it consists of one or two individuals; that those individuals were fired from General Steel for committing fraud against customers; that Armstrong would take the customers [sic] money and not deliver the building ordered; and that Armstrong Steel would soon be out of business." Docket No. 23 at 19-20, ¶¶ 18-19. Armstrong, however, fails to identify who made the statements or where they made them. Furthermore, Armstrong does not identify the date of any statement.

---

[5]*See Koch*, 203 F.3d at 1236-37 ("Rule 9(b)'s purpose is 'to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based . . . .'") (citation omitted).

Instead, all that can be inferred from the complaint is that the statements were likely made after May 4, 2010. *See* Docket No. 23 at 20-21, ¶¶ 21, 23. The Court concludes that this falls short of Rule 9(b)'s particularity requirements. *Cf. Matthews v. LaBarge, Inc.*, 407 F. App'x 277, 282 (10th Cir. 2011) (unpublished) (concluding that a proposed amended complaint failed to meet Rule 9(b)'s requirements because, even though it "identifie[d] the individual who allegedly promised Mr. Matthews the promotion during an interview, there remain[ed] no indication of where this promise was made, the means of communication, or what words conveyed the promise"). "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006) (quotation marks and citation omitted). Because Armstrong failed to specifically allege the who, when, where, and how of the statements underlying its CCPA claim, the Court will dismiss the second counterclaim pursuant to Rules 9(b) and 12(b)(6).

### C. Tortious Interference with Prospective Business Advantage

General Steel seeks dismissal of Armstrong's third counterclaim for tortious interference with prospective business advantage.[6] The entirety of General Steel's

---

[6]The Court notes that, from a review of Armstrong's allegations, it appears that it is attempting to assert a claim for tortious interference with a contractual relationship rather than with prospective business advantage. *See Wasalco, Inc. v. El Paso County*, 689 P.2d 730, 732 (Colo. App. 1984) ("[T]o prove intentional interference with a contractual relationship it is necessary to show, among other elements, that there was an underlying contract between plaintiff and a third party. To prove tortious interference with a prospective contractual relationship, it is not necessary that there be an underlying contract. But there must be a showing of intentional and improper interference by the defendant which prevented formation of a contract between plaintiff and the third party.") (citations omitted).

argument on that point is as follows:

> This claim fails in a manner that is hand-in-glove with the claim for commercial disparagement. "If the alleged impropriety is an allegedly defamatory statement, then the interference claim must fail if the statement is not an actionable defamation." The essential element of intentional and improper interference preventing formation of a contract is thus absent.
>
> Because Count I is not averred in a fashion stating actionable defamation, Count III must be dismissed along with it.

Docket No. 24 at 6 (quoting *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1201 (10th Cir. 2007)). General Steel, however, does not specify the relevant pleading deficiency in Count I.

As discussed above, General Steel sought dismissal of Count I for failure to adequately plead special damages. Special damages, however, are not always an element of a defamation claim. *See* Restatement (Second) of Torts § 573 ("One who publishes a slander that ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession, or of his public or private office, whether honorary or for profit, is subject to liability without proof of special harm."). General Steel does not articulate whether it believes that the tortious interference claim fails because the underlying defamation requires a showing of special damages or because the nature of the alleged statements do not constitute actionable negligence. *See TMJ Implants*, 498 F.3d at 1201 (concluding that, because the product disparagement claim was based upon non-actionable statements of opinion, the tortious interference claim based upon the same statements could not proceed). Because General Steel does not provide a persuasive basis for dismissal of Armstrong's tortious interference claim, and because any such

11

basis is not obvious from the face of the counterclaim, the Court will deny General Steel's request to dismiss Armstrong's tortious interference counterclaim.

### D. Civil Conspiracy

Armstrong asserts a counterclaim for civil conspiracy against General Steel. The elements of a civil conspiracy are as follows: "'[T]here must be: (1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.'" *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989) (quoting *More v. Johnson*, 568 P.2d 437, 439-40 (Colo. 1977)); *see Walker v. Van Laningham*, 148 P.3d 391, 396 (Colo. App. 2006). General Steel argues that the civil conspiracy counterclaim must be dismissed due to Armstrong's failure to allege the required "meeting of the minds." The Court agrees.

Armstrong alleges that "General Steel, through its agents Jeffrey Knight and Nathan Wright, and Jon Abbotts have entered into a strategic relationship." Docket No. 23 at 25, ¶ 49. Armstrong further alleges that Abbotts met with Knight and Wright on May 4, 2010 "to allow for the exchange of misappropriated confidential information belonging to Armstrong related to its business practices," that the information "was then used by General Steel as the basis for making disparaging and false misrepresentations of Armstrong," and that "General Steel through its intentional tortuous [sic] activity in concert with Abbotts has taken steps to intentionally and purposefully harm Armstrong's reputation and business to their own benefit." Docket

No. 23 at 25, ¶¶ 50-52. From these allegations, the purpose of the "strategic relationship" is unclear. The Court cannot determine whether the receipt and later use of the confidential information by General Steel was merely a consequence of that relationship or, rather, whether General Steel and Abbotts' relationship had as a specific purpose the illegal use of the information. "[T]he well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," and, therefore, "the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). Therefore, the Court will dismiss Armstrong's civil conspiracy counterclaim pursuant to Rule 12(b)(6).

### E. Punitive Damages

General Steel argues that Armstrong's request for punitive damages, *see* Docket No. 23 at 27, must be stricken for failing to comply with the Colorado statute which authorizes the recovery of punitive damages. *See* Colo. Rev. Stat. § 13-21-102(1.5)(a). Armstrong does not dispute that, as pled, the request is deficient. *See* Docket No. 31 at 10, ¶ 23. The Court will therefore strike the request for punitive damages from Armstrong's prayer for relief. *See Glaser v. Jordan*, No. 09-cv-01758-REB-MJW, 2010 WL 1268151, at *2 (D. Colo. March 30, 2010) (striking pursuant to Fed. R. Civ. P. 12(f)(2) a request for punitive damages that violated Colo Rev. Stat. § 13-21-102(1.5)(a)).

### F. Leave to Amend

In response to General Steel's motion, Armstrong requests, to the extent the Court concludes that there are pleading deficiencies, that it be afforded leave to amend

its counterclaims. The Local Rules in this District are clear that a motion "shall be made in a separate paper." D.C.COLO.LCivR 7.1.C. No motion to amend is pending before the Court. *See Calderon v. Kansas Dep't of Social and Rehabilitation Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) ("We have recognized the importance of Fed.R.Civ.P. 7(b) and have held that normally a court need not grant leave to amend when a party fails to file a formal motion."). Therefore, the Court has not considered Armstrong's request to amend.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiff's Motion Under Federal Rule of Civil Procedure 12 to Dismiss, to Strike, and for a More Definite Statement [Docket No. 24] is GRANTED in part and DENIED in part. It is further

**ORDERED** that Armstrong's first counterclaim for commercial disparagement, second counterclaim for deceptive trade practices, and fourth counterclaim for civil conspiracy are DISMISSED without prejudice. It is further

**ORDERED** that Armstrong's request for punitive damages in its prayer for relief, *see* Docket No. 23 at 27, is STRICKEN.

DATED June 10, 2011.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge