**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-01398-PAB-KLM

GENERAL STEEL DOMESTIC SALES, LLC, d/b/a GENERAL STEEL CORPORATION,
A Colorado limited liability company,

      Plaintiff,

v.

ETHAN DANIEL CHUMLEY, individually, and
ATLANTIC BUILDING SYSTEMS, LLC, a Delaware corporation, d/b/a ARMSTRONG STEEL CORPORATION,

      Defendants.

---

**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE**

---

Plaintiff General Steel Domestic Sales, LLC, responds to the Court's April 26, 2012, Order directing it to show cause why defendants are not entitled to summary judgment on its trademark and unfair competition claims on account of the absence of any actual damages.

    *1.*    *Plaintiff has a case involving use of a counterfeit mark.*

The Court has directed that General Steel indicate whether 15 U.S.C. § 1117(c) is implicated by this matter. It is. The Lanham Act prohibits the use of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale ... of any goods or services [where] such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To recover on a federal trademark counterfeiting claim, a plaintiff must show that: (1) the defendant infringed a registered trademark in violation of 15 U.S.C. § 1114; and (2) the defendant intentionally used the mark knowing it was a counterfeit as the term counterfeit is defined in 15 U.S.C. § 1116. 15 U.S.C. § 1117(b). Section 1116 defines

"counterfeit mark" as "a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." 15 U.S.C. § 1116(d)(1)(B)(i).  Elsewhere, the statute defines "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.

It has been stipulated that General Steel possesses registered marks.  FINAL PRETRIAL ORDER EXHIBIT A [CM-ECF Document # 111-1] at ¶ 5, incorporating by reference AMENDED COMPLAINT [CM-ECF Document # 21] EXHIBIT A;  **Exhibit 1** hereto (attached as Exhibit 1 of Plaintiff's summary judgment opposition, CM-ECF Document # 114);  CM-ECF Document # 188 (Stipulated jury instruction no. 11).  That registration depicts General Steel's logo.  *Id.*  It also reflects that General Steel possesses a "Word Mark" in "General Steel Corporation," disclaiming only "Steel Corporation."  *Id.*  Even Defendants' own website reflects that "General Steel Corporation and the associated logo are registered trademarks of General Steel Domestic Sales, LLC."  **Exhibit 2.**

The evidence reflects that Defendants used General Steel's registered marks.  **Exhibit 2** is a page from Defendants' website. It depicts General Steel's logo.  It claims "Armstrong general steel building structures are faster to assemble."  It goes on to suppose that Defendant Armstrong, "being one of the leading providers of prefabricated general steel buildings," has "the expertise in providing turnkey general steel construction metal building solutions to our clients."  It reflects that "Armstrong will Research, Plan and Price your General Steel Materials Construction Project."  It describes "the prefab general steel all purpose steel buildings that we design."  It takes pride that "Armstrong Steel has earned their longstanding reputation by

2

offering the best prefabricated general purpose general steel structures." It boasts that "Armstrong Steel has years of experience helping businesses and organizations to construct commercial general steel buildings." In short, Defendant Armstrong's site uses General Steel's logo in connection with pretending that Armstrong offers, designs, researches, plans, prices, and sells General Steel buildings. *See also* Plaintiff's summary judgment response, CM-ECF Document # 114, at pp. 6-7, SAF # 19, admitted in part at CM-ECF Document # 126 p. 5 ¶ 19.[1]

Such use is actionable under the Lanham Act's counterfeit mark provisions. *Dell, Inc. v. BelgiumDomains, LLC*, 2007 WL 6862342 at ** 10-11 (S.D. Fla. Nov. 21, 2007) (domain names are counterfeit where they "either contain the [authentic] marks or differ from [them] by only one character."); *Carrier Corp. v. Kaiver*, 2012 WL 218989 at *1 (E.D. Wis. Jan. 24, 2012) (statutory damages awarded for use of counterfeit marks where defendant "has included the plaintiff's marks on several of his advertisements. Plaintiff's marks appear with various others as examples of the [] equipment that the defendant services. Because the marks have been registered, the defendant is not allowed to use them without permission of the defendant, and he clearly lacks such permission.")

In addition, Defendants' online ad campaigns have used General Steel's word mark. *See* **Exhibit B** to Defendants' Motion for Summary Judgment, CM-ECF Document # 95-2 (linking

---

[1] Specifically, Defendants admitted the following: that after this suit was filed, Armstrong began using a new webpage called "May the Best Building Win" – stating that General Steel is one of the two best buildings on the market; that Defendants' webpage states that "General Steel Corporation and the associated logo are registered trademarks of General Steel Domestic Sales, LLC"; that Defendants admit that the words General Steel Corporation are a registered trademark; that the webpage uses the General Steel name and logo in addition to General Steel's name; that Defendants use the name "General Steel" fifteen (15) times on this "May the Best Building Win" webpage; that the webpage also contains hyperlinks under the words "general steel" which, if clicked on, take one back to Armstrong Steel's order page for steel building orders.

to Armstrong Steel via text reading, *inter alia*, "General Steel Buildings," "General Steel Buildings … Price Your Building Online," "Wholesale Steel Buildings … Price Your General Steel Building," "General Steel Wholesale," "General Steel Pricing," and "General Steel Buildings Direct!" Defendants used such ads until Google instructed them to stop. Plaintiff's summary judgment response, CM-ECF Document # 114, at p. 7, SAF # 20. *See also* Plaintiff's summary judgment response, CM-ECF Document # 114, at p. 7, SAF # 21, admitted in part at CM-ECF Document # 126 p. 5 ¶ 21.[2]

It is not disputed that General Steel and Defendants are in the business of selling the same goods – *i.e.,* prefabricated steel buildings. Defendants' summary judgment motion, CM-ECF Document # 95, at p. 2, SUF # 1. It is likewise undisputed that Defendants use the Armstrong Steel website in order to sell their products – *i.e.,* "in connection with" their building sales. Use of General Steel's genuine mark is within the scope of a Lanham Act counterfeiting claim. *Century 21 Real Estate, LLC v. Bercosa Corp.,* 666 F. Supp.2d 274, 290 (E.D.N.Y. 2009). More specifically, use of a genuine mark is actionable as use of a counterfeit mark "to the extent [such use] created the erroneous perception that [the mark holder was] the source" of the goods or services. *Id.*

General Steel will seek statutory damages in the alternative in this case, to the extent necessary. *See, e.g., Yahoo! Inc. v. XYZ Companies*, 2011 WL 6072263 at * 8 (S.D.N.Y. Dec. 5, 2011) ("Courts awarding statutory damages under § 1117(c) consider both compensatory and punitive factors, including (1) the defendants' likely profits; (2) plaintiff's lost revenues; (3) the

---

[2] Specifically, Defendants admitted the following: five to ten percent of Armstrong's leads were from its General Steel ad campaign. Defendants' document production reflected 153 separate ad campaigns directed at General Steel.

value of the mark; (4) whether the defendants' infringement was willful; (5) the extent of defendants' cooperation with the court; (6) the scale of defendants' infringement activities; and (7) the deterrent effect of the award, both on defendants and others." The court concluded that "a large damages award would have a deterrent effect on both Defendants and other would-be perpetrators of a similar scheme." awarded maximum damages of $1,000,000 per counterfeit Yahoo! mark per type of service provided, for a total award of $9,000,000 for Defendants' trademark violations prior to October 13, 2008, and $2,000,000 per counterfeit Yahoo! mark per type of service provided, for a total award of $18,000,000, for Defendants' trademark violations after October 13, 2008. (The court cited *UMG Recordings, Inc. v. MP3.Com, Inc.,* No. 00 Civ. 472 JSR, 2000 WL 1262568, at *5–6, 2000 U.S. Dist. LEXIS 13293, at *17–18 (S.D.N.Y. Sept. 6, 2000) ("the potential for huge profits in the rapidly expanding world of the Internet is the lure ... that will also tempt others to [break the law] if too low a level is set for the statutory damages in this case"); *Illinois Tool Works Inc. v. Hybrid Conversions, Inc.*, 817 F. Supp. 2d 1351, 1355-56 (N.D. Ga. 2011) ("Generally, statutory damages [under the Lanham Act] are awarded when no actual damages are proven, or actual damages and profits are difficult or impossible to calculate." *Cable/Home Comm. Corp. v. Network Prods., Inc.,* 902 F.2d 829, 851 (11th Cir.1990). The court has wide discretion in determining an award of statutory damages. *Id.* at 853. Two factors that warrant special consideration are the willfulness of a defendant's conduct and the deterrent value of any sanction imposed. *Id.* The defendant's willful and blatant conduct warranted significant statutory damages award of $500,000 per infringement. It will be shown in this case that the Defendants conduct and profits warrant a significant award of statutory damages.

2.       *Actual damages are not required in the Tenth Circuit*.

The Court's Order on summary judgment (CM-ECF Document # 233) reflects that General Steel has not identified any actual damages. However, under Tenth Circuit law, actual damages are not a prerequisite for recovery of disgorgement of profits under the Lanham Act. *Bishop v. Equinox Int'l Corp.,* 154 F.3d 1220, 1223 (10th Cir.1998) ("*Bishop I*"), *Estate of Bishop v. Equinox Int'l Corp.,* 256 F.3d 1050, 1054 (10th Cir.2001) ("*Bishop II* "); *Western Diversified Services, Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1272-73 (10th Cir. 2005); *Icon Health & Fitness, Inc. v. Nautilus Group, Inc.*, 2004 WL 6031124 (D. Utah Dec. 21, 2004). General Steel maintains its request for disgorgement in reliance upon this authority.

3.       *Plaintiff can recover attorneys' fees*.

The Court has discretion to award attorneys' fees in addition to statutory damages under 15 U.S.C. § 1117(a) in "exceptional cases"— generally, those trademark infringement cases in which infringement is willful. *Yahoo! Inc. v. XYZ Companies*, 2011 WL 6072263 at * 8 (S.D.N.Y. Dec. 5, 2011); *see also 3M Company v. Mohan*, 2011 WL 197219 at *4-6 (D. Minn., Jan. 19, 2011) (Exceptional case where there was egregious conduct by a party, such as malicious, fraudulent, deliberate, or willful conduct). The court found that the case was a complex litigation and awarded plaintiff $838,000 as reasonable attorney's fees for the complex matter. *Id.* at *6). Ample evidence supports that Defendants' infringement was willful, malicious, fraudulent, and deliberate. Plaintiff thus has a remedy here as well.

4.       *Plaintiff still has a common-law unfair competition claim*.

The Court's summary judgment Order (CM-ECF Document # 233) treats Plaintiff's trademark and unfair competition claims synonymously. However, the parties have stipulated to an instruction defining common-law unfair competition thus:

> For plaintiff, General Steel to recover from defendants on the claim that defendants unfairly competed with General Steel in violation of Colorado law, you must find that both of the following have been proved by a preponderance of the evidence:
>
> 1. That the defendants copied General Steel's products or services, or misappropriated General Steel's name or operations in some regard, and
>
> 2. That the defendants' conduct was likely to deceive or confuse the public because of the difficulties in distinguishing between the plaintiff's and defendant's products and services.

Instruction No. 67 (Stipulated), CM-ECF Document # 188. As supporting authority, the parties rely upon *Netquote, Inc. v. Byrd,* 504 F. Supp. 2d 1126, 1131 (D. Colo. 2007). A disgorgement remedy is available under this claim whether or not evidence of actual damages has been presented. *Julius Hyman & Co. v. Velsicol Corp.,* 233 P.2d 977, 1009 (1951); *Lexton-Ancira Real Estate Fund, 1972 v. Heller*, 826 P.2d 819, 824 (Colo. 1992).

     *5.*    <u>*Plaintiff asked for injunctive relief on its trademark infringement claim*</u>.

The Court's Order on summary judgment reflects that it does not appear that General Steel has sought injunctive relief arising out of trademark infringement. Plaintiff respectfully submits that it has requested such relief. *See* First Claim for Relief, in ¶¶ 66, 105, and Prayer for Relief § A of its Amended Complaint (CM-ECF # 21) and in the Final Pretrial Order at 2-3 (CM-ECF # 119). Defendants' summary judgment practice did not address this request. For this additional reason, Plaintiff respectfully submits that summary judgment on its trademark infringement claim should not enter.

DATED:  May 9, 2012.

/s/ Patrick D. Frye
David S. Fein, Reg. No. 18788
Patrick D. Frye, Reg. No. 30369
Building Services Group, LLC Legal Dept.
10639 Bradford Road
Littleton, CO 80127
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this document was filed and served via the Pacer/ECF System on the day of its filing with the Court upon the following:

Peter C. Lemire
Jacob W. Paul
Leyendecker & Lemire, LLC
9137 E. Mineral Circle, Suite 280
Centennial, CO 80112
Peter@coloradoiplaw.com
Jake@coloradoiplaw.com

Tiffaney A. Norton
Senter Goldfarb & Rice, L.L.C.
1700 Broadway, Suite 1700
Denver, Colorado 80290
Telephone: (303) 320-0509
Facsimile: (303) 320-0210
E-mail: tnorton@sgrllc.com

Paul M. Grant
Timmins LLC
450 E. 17th Avenue, Ste. 210
Denver, CO 80203
Golden, CO 80401
pg@timminslaw.com

s/ Adam Walczak