**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-01398-PAB-KLM

GENERAL STEEL DOMESTIC SALES, LLC d/b/a
GENERAL STEEL CORPORATION, a Colorado limited liability company

    Plaintiff

v.

ETHAN DANIEL CHUMLEY, individually, and
ATLANTIC BUILDING SYSTEMS, LLC d/b/a
ARMSTRONG STEEL CORPORATION, a Delaware corporation

    Defendants

---

### DEFENDANTS' MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS PURSUANT TO C.R.S. § 6-1-113(2)(b)(3)

---

Defendants Ethan Chumley and Atlantic Building Systems, LLC d/b/a Armstrong Steel Corporation (together, "Defendants"), by and through their attorneys Grant Kuhn LLC, file their Motion for Award of Attorney's Fees and Costs Pursuant to C.R.S. § 6-1-113(2)(b)(3) and, in support thereof, respectfully set forth as follows:

#### D.C.Colo.LCivR 7.1(A) Conferral

Prior to filing this Motion, the undersigned conferred with David Fein, counsel for Plaintiff, regarding the relief requested herein. Mr. Fein indicated that Plaintiff will oppose the Motion.

#### Background

1.    Among the claims alleged by Plaintiff General Steel Domestic Sales, LLC ("General Steel") in this case was a claim for violation of the Colorado Consumer

Protection Act (the "CCPA").  In its Amended Complaint and Jury Demand (the "Amended Complaint"), General Steel alleged without elaboration that Defendants' alleged deceptive trade practices injured General Steel and that it "sustained damages" as a result of such trade practices despite the fact that all of Defendants' alleged deceptive trade practices were directed to Defendants' customers or potential customers, not to General Steel.  [Amended Complaint, Doc. # 21, at ¶¶ 77-88].

2. Notwithstanding its allegations that Defendants' alleged deceptive trade practices injured it and caused it damages, General Steel did not identify any damages caused by Defendants' alleged deceptive trade practices in its Initial Rule 26(a)(1) Disclosures.  [Exhibit A attached hereto].  When Defendants sought discovery on General Steel's damages resulting from Defendants' alleged deceptive trade practices, General Steel admitted that it did not seek damages resulting from Defendants' alleged deceptive trade practices and, consequently, refused to provide Defendants with any information regarding lost customers, lost contracts, lost revenue and/or lost profits:

> Interrogatory No. 1:  Identify, including name and contact information, each person or entity to which General Steel has sold products or services to since 2007.
>
> Response to Interrogatory No. 1:  As reflected in Plaintiff's Initial Rule 26(a)(1) Disclosures, Plaintiff does not seek damages in the form of Plaintiff's lost sales or revenue.  Therefore, Plaintiff objects to this request as not reasonably calculated to lead to the discovery of admissible evidence, overly broad, and harassing.
> …
> Interrogatory No. 7:  Please provide the number of hits you have had to your website, www.gensteel.com or any related websites, since January 2007.
>
> Response to Interrogatory No. 7:  As reflected in Plaintiff's Initial Rule 26(a)(1) Disclosures, Plaintiff does not seek damages in the form of Plaintiff's lost sales or sales revenue.  Therefore, Plaintiff objects to this request as not reasonably calculated to lead to the discovery of admissible evidence, overly broad, and harassing…

Interrogatory No. 8: Please provide the system and/or procedures that General Steel uses to track the source of its sales leads.

Response to Interrogator No. 8: As reflected in Plaintiff's Initial Rule 26(a)(1) Disclosures, Plaintiff does not seek damages in the form of Plaintiff's lost sales or sales revenue. Therefore, Plaintiff objects to this request as not reasonably calculated to lead to the discovery of admissible evidence, overly broad and harassing.

Interrogatory No. 9: Please provide a description for all sales General Steel has lost as a result of actions or conduct taken by Armstrong Steel as alleged in Plaintiff's Amended Complaint.

Response to Interrogatory No. 9: As reflected in Plaintiff's Initial Rule 26(a)(1) Disclosures, Plaintiff does not seek damages in the form of Plaintiff's lost sales or sales revenue. Plaintiff objects to this interrogatory as premature as Plaintiff is unable to answer at this time. As Plaintiff reviews material recently received, and yet to be received, from Defendants, it will supplement this answer when the information is available.

Interrogatory No. 10: Please describe in detail all damages that General Steel is alleging in its Amended Complaint to have been caused by Defendants.

Response to Interrogatory No. 10: Plaintiff has not yet quantified its damages and continues to receive and review information through discovery that will enable it to provide such detail. Plaintiff will supplement this answer when the information is available. As reflected in Plaintiff's Initial Rule 26(a)(1) Disclosures, Plaintiff does not seek damages in the form of lost sales or sales revenue. Categories of damages Plaintiff does seek include the disgorgement of profits received by Defendants and unjust enrichment, as well as damages as provided by § 6-1-113, C.R.S. *See*, Plaintiff's Initial Rule 26(a)(1) Disclosures.

[Exhibit B attached hereto]. General Steel's owner and president, Jeffrey Knight, verified the truth and accuracy of the responses set forth in Exhibit B.

3. General Steel conducted extensive discovery on its CCPA claim, including, without limitation, taking ten (10) depositions in which it extensively questioned the deponents on Defendants' business practices, serving Defendants with written discovery regarding Defendants' business practices in response to which Defendants produced thousands of pages of documents, and obtaining Defendants'

customer information and contacting such customers [Motion for Leave to Amend Final Pretrial Order, Doc. #146, at p. 3].

4. Because Defendants asserted an unclean hands defense to the CCPA claim, Defendants conducted a substantial amount of discovery regarding such defense. While General Steel stonewalled Defendants' efforts to obtain information and documents regarding Defendants' unclean hands defense, Defendant successfully obtained affidavits and documents from third parties to support such defense. Although General Steel tried to impede Defendants' efforts to obtain and use information and documents from third parties in support of its unclean hands defense [*see, e.g.*, Exhibit C attached hereto; Motion to Exclude Presentment and Consideration of Evidence, Doc. #108; Response to Motion for Leave to Amend Pretrial Order, Doc. #228], General Steel's tactics were largely unsuccessful [*see, e.g.*, Minute Entry re: Motion for Leave to Amend Final Pretrial Order, Doc. #208; Order Granting Motion for Leave to Amend Pretrial Order, Doc. # 232].

5. Despite conducting extensive discovery on its CCPA claim, General Steel never produced any evidence of damages resulting from Defendants' alleged deceptive trade practices and did not even develop a reasonable damages theory or methodology for calculating its damages. At his deposition conducted two (2) days before the discovery cutoff in this case, Mr. Knight testified as follows with respect to General Steel's damages resulting from Defendants' alleged deceptive trade practices:

> Q (Mr. Grant):  Did General Steel – or was General Steel deceived by Armstrong Steel's alleged use of a sales script?
>
> A (Mr. Knight):  Were we ever deceived by their use of a sales script?  Is that an allegation?

Q: Please answer the question.

A: That's – you know, your questions are unintelligible. I don't know what that means, Grant.

Q: Which part don't you understand?

A: Any of it. Were we ever deceived by their script? That means that we would have had to have been a customer to have been deceived. That's a stupid question.

Q: Can you answer the question?

A: I'm going to say no.

Q: Let's go to paragraph 72, page 15. In paragraph 72, General Steel alleges that it has been and is likely to be injured as a result of the misrepresentations, either by direct diversion of sales or by a lessening of goodwill associated with its products. How is General Steel likely to be injured because of what happens with a customer at Armstrong Steel?

A: Well, if a customer of Armstrong Steel is deceived and purchases from Armstrong, that's somebody that we can't sell, who's playing by the rules. I think that's pretty much the basis of this lawsuit.

Q: So is General Steel alleging in this lawsuit that it has lost customers to Armstrong Steel because of Armstrong Steel's use of certain business practices?

A: I don't think we're claiming damages for specific lost customers, but I think we are claiming that, yes, the totality of Armstrong's acts have caused us to lose business, yes.

Q: Can you identify a single customer that has been, in your words, a direct diversion to Armstrong Steel from –

A: Not –

Q: General Steel?

A: Not by name.

    Mr. Fein: Mr. Grant, are we –

Q: Do you know of any instances?

    Mr. Grant: Sorry.

A:  Yeah, yeah.  Once again, anecdotally, I've talked to people that have they've – were considering General Steel and then saw that Armstrong was a manufacturer and that they had a really god deal on a building that was outside in their warehouse and bought from them.  I've talked to people like that.

Q:  But again, you can't identify that customer by name?

A:  No.

...
Q:  How has General Steel been damaged by the alleged use of a sales script with specific customers?

A:  Well, because they're unfairly competing in the market.  We're – like I said, we're playing by the rules, and they're fraudulently inducing people into contracts, so we're damaged.
...

Q:  So I think you've testified that General Steel has been damaged because it's not fair that Armstrong Steel allegedly has used what General Steel describes as misleading business practices.  Other than that unfairness argument, how else has General Steel been damaged by the alleged use of what General Steel refers to as misleading sales scripts?

    Mr. Fein:  And for the record, I'm going to object to all these questions that – this is Mr. Knight's personal deposition, as I've said, and he's not here as the corporate representative, but continue.

A:  Can you restate the question?

    Mr. Grant:  I'll have Kim read that one back, please.
    ...

Q:  I think the end of that is by the alleged use of what General Steel describes as misleading sales practices?

A:  How – other than the fact that they are illegally procuring customers, and we're not doing that, I think that pretty much says it all.

Q:  So that's the extent of General Steel's damages, is just that it's unfair that Armstrong Steel is doing this?

A:  No.  I'm not able at this point to give a comprehensive analysis of our damages.  That was never something I prepared for.

> Q:  And I'm not asking you for a comprehensive analysis of your damages. I'm asking you what your understanding of General Steel's damages are from the alleged use of these misleading sales practices, other than that it's unfair.
>
> A:  I'm not sure about that.
>
> Q:  And even if it's unfair, how has General Steel been damaged by that unfairness?
>
>   Mr. Fein:  He just testified he's not sure. It's asked and answered.
>
>   Mr. Grant:  Well, he actually was talking about any other things besides unfairness. Now I'm asking about what you said about unfairness.
>
> A:  Other than it being unfair?
>
> Q:  So the new question is, even if it's unfair, how does unfairness equate to General Steel being damaged?
>
> A:  Well, we're damaged – I think it's – it's obvious. But Armstrong is allowed to commit fraud to procure sales; whereas General Steel doesn't do that. So they are taking customers out of the marketplace by these illegal means that would have gone to another company that doesn't use these practices, meaning General Steel.
>
> Q:  Can you identify a single customer that would have gone to General Steel had Armstrong Steel not used the alleged misleading business practices?
>
> A:  Not by name.

[Exhibit D attached hereto at 219:23-221:24; 229:19-24; 230:11-24; 231:9-232:22].[1]

Thus, in the span of fourteen (14) pages of his deposition transcript, Mr. Knight identified General Steel's damages as the loss of business, denied that General Steel is seeking damages for loss of business, twice more identified General Steel's damages as the loss of business, failed to identify a single customer that General Steel lost, and failed to articulate General Steel's damages theory.

---

[1] Exhibit D also exemplifies General Steel's counsel's repeated use of improper objections to coach Mr. Knight in violation of D.C.Colo.R. 30.3(A)(1).

6.     By the completion of discovery on September 1, 2011, General Steel had not produced a shred of evidence regarding any damages it incurred as a result of Defendants' alleged use of deceptive trade practices. Accordingly, in their Motion for Summary Judgment filed on October 18, 2011, Defendants moved for summary judgment on General Steel's CCPA claim for, among other reasons, General Steel's failure to show that it incurred an injury or damages resulting from Defendants' alleged deception. [Defendants' Motion for Summary Judgment, Doc. #95, at pp. 16-18]. In response, General Steel only mustered the conclusory statement that it "has been gravely injured." [Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment, Doc. #116, at p. 19]. Nonetheless, General Steel acknowledged that it sought damages "measured by Defendants' revenues rather than by losses measured by its own economic data points." [Doc. #116 at p. 19].

7.     In its April 26, 2012 Order regarding Defendants' Motion for Summary Judgment, the Court granted summary judgment in favor of Defendants and against General Steel on the CCPA claim because "it failed to identify evidence that it in fact suffered any injury supporting an award of damages." [Order, Doc. #233, at p. 3].

8.     From the inception of discovery to the present, General Steel forwarded information and documents it obtained in this case to the Colorado Attorney General - specifically to Jay Simonson, First Assistant Attorney General - and dogged him to investigate Armstrong Steel's business practices. At General Steel's constant urging, Mr. Simonson eventually initiated an investigation of Armstrong Steel. Although the investigation was private, General Steel, of course, was aware of it because its actions and the one-sided information and documents it provided to Mr. Simonson from this case

prompted the investigation. Thus, it was not a coincidence that General Steel requested from Defendants "[a]ll documents relating in any manner to an investigation of Armstrong Steel by the Colorado Attorney General's office." [Exhibit E attached hereto at Doc. Request No. 16]. Although the Colorado Attorney General investigated Armstrong Steel and did not take any action against it, General Steel has continued to hound Mr. Simonson to continue the investigation of Armstrong Steel. For example, as recently as May 2, 2012, Mr. Simonson alerted the undersigned that, at the repeated request of Patrick Frye, counsel for General Steel, he would be serving Defendants with a subpoena for documents produced in discovery in this case.

## Legal Standard

9. Pursuant to C.R.S. § 6-1-113(2)(b)(3), any person who brings a claim for violation of the CCPA that the court finds "to be groundless and in bad faith or for the purpose of harassment shall be liable to the defendant for the costs of the action together with reasonable attorney fees as determined by the court." "A claim or defense is groundless if the allegations of the complaint, although sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence." *Wheeler v. T.L. Roofing, Inc.*, 74 P.3d 499, 505 (Colo. App. 2003). Put another way, "a claim is 'groundless' if the proponent has a valid legal theory, but can offer little or no evidence to support the claim." *Id.* Vexatious claims include claims brought in bad faith or for the purpose of harassment. *Consumer Crusade, Inc. v. Clarion Mortgage Capital, Inc.*, 197 P.3d 285, 289-290 (Colo. App. 2008). "Vexatiousness includes 'conduct that is arbitrary, abusive, stubbornly litigious, or disrespectful of truth.'" *Id.*

**Argument**

10.     Although it claimed in its Amended Complaint that it sustained damages as a result of Defendants' alleged use of deceptive trade practices, General Steel never produced a stitch of evidence to support such claim.  This failure alone shows that the CCPA claim was groundless because General Steel never offered any evidence to establish two mandatory elements of a CCPA claim – that it suffered injury in fact to a legally protected interest and that the challenged trade practices caused its injury.  [Doc. #233 at p. 3, fn. 4]; *see Ranta Construction, Inc. V. Anderson*, 190 P.3d 835, 847 (Colo. App. 2008)(affirming award of attorney's fees to party defending against a CCPA claim where plaintiff failed to provide any evidence of public impact); *Wheeler*, 74 P.3d at 506 (same).  In fact, General Steel admitted as early as January 7, 2011, when it responded to Defendants' first set of interrogatories, that it did not claim any injury resulting from Defendant's alleged use of deceptive trade practices.  [Exhibit B].  General Steel's acknowledgment was an obvious tactic to avoid having to produce to Defendants information regarding its customers and financials.  However, it was fatal to the CCPA claim.  Nonetheless, despite such acknowledgement and its effect on the merits of its CCPA claim, General Steel stubbornly continued to pursue its CCPA claim and, in doing so, forced Defendants to spend tens of thousands of dollars in attorney's fees and costs to defend against it.  When "a party persists in pursuing a claim, despite knowing that it lacks admissible evidence to support that claim, the claim may properly be characterized as substantially groundless...and the party's conduct, as substantially vexatious." *Consumer Crusade*, 197 P.3d at 291 (citations omitted).

11.     Not only was the CCPA claim groundless, but General Steel's pursuit of such claim in the face of its acknowledgement that it did not incur an injury and that it did not sustain damages as a result of Defendants' alleged use of deceptive trade practices was in bad faith and for the purpose of harassment.  General Steel used its CCPA claim to obtain information and documents from Defendants to which it otherwise would not have been entitled – such as customer contact information, customer dispute information, and documents evidencing pre-order customer communications – so that it could segregate any information and documents negatively portraying Defendants and selectively forward such information and documents to the Colorado Attorney General.  Thus, clearly knowing that it could not prevail on its CCPA claim given its disavowal of injury and damages, General Steel persisted in its pursuit of the CCPA claim to further a goal unrelated to this litigation – the harassment of Defendants by using information and documents obtained in this case to persuade the Colorado Attorney General to initiate an investigation of Armstrong Steel.  General Steel's goal was improper, harassing and abusive.  Accordingly, an award of attorney's fees and costs pursuant to C.R.S. § 6-1-113(2)(b)(3) is appropriate here.  *See Consumer Crusade*, 197 P.3d at 290-291 (affirming award of attorney's fees for pursuit of groundless and vexatious claim for violation of the Telephone Consumer Protection Act where plaintiff produced only a single witness to testify about 2 of 414 facsimiles that it alleged were improperly sent).

**Defendants' Attorney's Fees and Costs Incurred to Defend General Steel's CCPA Claim**

12.     Defendants retained the undersigned for the sole purpose of assisting existing counsel in the defense of the CCPA claim. Accordingly, the undersigned almost exclusively devoted his efforts in this case to the defense of such claim. As more fully set forth in Exhibit F attached hereto, Defendants have incurred attorney's fees for the undersigned's work related to General Steel's CCPA claim in the amount of $98,400.00. In addition, Defendants have incurred costs related exclusively to General Steel's CCPA claim in the amount of $1,528.04.

13.     As more fully set forth in Exhibit G attached hereto, Defendants also have incurred attorney's fees for the work of their co-counsel, Leyendecker & Lemire, LLC, related to General Steel's CCPA claim in the amount of $54,823.24. In addition and separate and apart from the costs referred to in Exhibit F, Defendants have incurred costs related exclusively to General Steel's CCPA claim in the amount of $1,639.20.

14.     All of the attorney's fees requested by Defendants in this Motion are reasonable because such fees reflect time billed that was necessary under the circumstances and are based on hourly rates that are less than or equal to the prevailing market rates in the Denver metropolitan area. *Loncar v. Western Peak, LLC*, 2012 WL 1560456, *2 (D. Colo. 2012), *citing Guides, Ltd. V. Yarmouth Group Property Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002).

WHEREFORE, Defendants respectfully request that the Court award them $153,223.24 in attorney's fees and $3,167.24 in costs as a result of General Steel's filing and pursuit of its groundless, bad faith, and/or harassing CCPA claim and provide such other and further relief to which Defendants may be justly entitled.

Respectfully submitted this 10th day of May, 2012.

                                            GRANT | KUHN LLC

                                            By: /s/Paul M. Grant
                                            Paul M. Grant, #26517
                                            Grant | Kuhn LLC
                                            143 Union Boulevard, Ste. 550
                                            Lakewood, CO 80228
                                            Telephone: (720) 545-0883
                                            Fax: (303) 985-4241
                                            pgrant@grantkuhnllc.com
                                            *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing Motion for Award of Attorney's Fees and Costs Pursuant to C.R.S. § 6-1-113(2)(b)(3) was served via the CM/ECF system on the following on this 10th day of May, 2012:

David S. Fein
Patrick Frye
Building Services Group, LLC
8321 S. Sangre De Cristo, Suite 300
Littleton, CO 80127

Tiffaney A. Norton
Senter, Goldfarb & Rice, L.L.C.
1700 Broadway, Suite 1700
Denver, CO 80290

                                          /s/Paul M. Grant
                                           Paul M. Grant