**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-01398 PAB-KLM

GENERAL STEEL DOMESTIC SALES, LLC, d/b/a
GENERAL STEEL CORPORATION, a Colorado limited liability company,

Plaintiff,

v.

ETHAN DANIEL CHUMLEY, individually; and
ATLANTIC BUILDING SYSTEMS, LLC, a Delaware corporation, doing business as
ARMSTRONG STEEL CORPORATION.

Defendants.

**PLAINTIFF'S TRIAL BRIEF**

Plaintiff General Steel Domestic Sales, LLC, hereby submits this Trial Brief.

**A.** *Summary of Trial*

Following the Court's various recent Orders, trial will be on Plaintiff's claims for (1) Lanham Act trademark infringement/federal unfair competition; (2) Lanham Act false advertising/federal unfair competition; and (3) state common-law unfair competition. On Plaintiff's Lanham Act trademark infringement claim, the Court held that Plaintiff did not have actual damages available, but showed cause to enable Plaintiff to recover statutory damages, and held that Plaintiff's disgorgement remedy is still available. (Order dated May 18, 2012; CM-ECF #265). Plaintiff has alleged in its Complaint and Amended Complaint that it seeks injunctive relief on its trademark claim, and has requested that the Court clarify this.

On Plaintiff's Lanham Act false advertising claim, the Court held that the Plaintiff's disgorgement remedy is still available, and ordered Defendant to show cause why summary judgment should not enter against Defendant on Plaintiff's false advertising claim. The parties briefed this issue, and await the Court's ruling. In addition, as shown below, Plaintiff's false advertising claim covers not only the false written website advertising by Defendants, but their commercial speech – uniform sales presentations, which are within the scope of Plaintiff's Lanham Act claim under §1125(a)(1)(B). Pursuant to the Court's Order (CM-ECF #265 at 2-3), Plaintiff's disgorgement remedy for false advertising is available at trial.

On Plaintiff's common law unfair competition claim, Plaintiff also seeks disgorgement, pursuant to a stipulated jury instruction.

**B.** *The Scope of Plaintiff's Lanham Act False Advertising Claim*

Defendants' prior Trial Brief filed on April 25, 2012 (CM-ECF # 230) at 5-6 argues that Plaintiff has no viable claim under 15 U.S.C. § 1125(a) (Lanham Act) for false advertising because "none of the statements (on Armstrong's website) refer to an inherent quality or characteristic of Armstrong Steel's product." Defendants' argument appears to be that their website misrepresentations about being a "manufacturer" and the "nation's leading manufacturer" of pre-engineered steel buildings (and the related misrepresentations about their manufacturing facilities) do not refer to their "product" of pre-engineered steel buildings (e.g., advertising that they sell steel buildings when they are made of cardboard).[1] Defendants'

---

[1] As addressed in Plaintiff's Response to Defendants' Motion for Summary Judgment at 19-20 (CM-ECF # 114), the "inherent quality or characteristic of the product" test for materiality followed by the Second Circuit in *Nat'l Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841, 855 (2d Cir. 1997) (relied upon by Defendants in their Motion for Summary Judgment (CM-ECF #95) is not followed by the Tenth Circuit.

argument that there has been no false advertising about an inherent quality of its product has already been rejected by the Court:

> Armstrong admits that it made the advertising statements identified by General Steel. As for whether these statements are materially false, Armstrong asserts a vague and unsupported denial, *see* Docket No. 126 at 6, ¶ 28, failing to offer any evidence refuting the literal falsity of the statements or to explain why, when applying the materiality requirement it proposes, statements regarding whether and how Armstrong manufactures its products are immaterial.

See, Order dated April 26, 2012 at 8 (CM-ECF #233). Accordingly, the Court has found Defendants' website advertising (as alleged in ¶50 of Plaintiff's Amended Complaint and as stipulated by Defendants) to be materially false advertising.[2]

The scope of General Steel's Lanham Act claim under §1125(a)(1)(B) is broader than the false statements on Armstrong's website. Plaintiff's Amended Complaint alleges that "Defendants have made false or misleading descriptions of fact or false representations of fact in their commercial advertising about their products or services as described above including but not limited to the allegations of paragraph 50 above." Amended Complaint at ¶ 68 (CM-ECF # 21). In *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273-74 (10th Cir. 2000), the Tenth Circuit adopted the following factors for a claim under §1125(a)(1)(B):

> In order for representations to constitute "commercial advertising or promotion" under Section 43(a)(1)(B), they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

---

[2] In addition, under *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 30, 123 S. Ct. 2041, 2046, 156 L. Ed. 2d 18 (2003), the Trademark Law Revision Act of 1988 made clear that § 43(a) covers origin of production as well as geographic origin.

*Id.* Therefore, in addition to the false website advertising by Defendants, Defendants false and misleading uniform sales presentations used in further of their false website advertising are within the scope of Plaintiff's Lanham Act claim under §1125(a)(1)(B).  *See* also, *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1386 (5th Cir. 1996) (Coca-Cola's use of advertising materials during negotiations with representatives of the eleven "cross-franchise" bottlers does not constitute merely isolated, individual statements of opinion by a single sales representative to a single customer.); *Nat'l Artists Mgmt. Co., Inc. v. Weaving*, 769 F. Supp. 1224, 1235-36 (S.D.N.Y. 1991) (oral "bad mouthing" of competitor constituted commercial speech under §1125(a)).

Accordingly, at trial, evidence of Defendants' misleading and uniform sales presentations is highly relevant to Plaintiff's false advertising claim under §1125(a)(1)(B). Under the law set forth above, Defendants' misleading and uniform sales presentations were not only in furtherance of their materially false website advertising scheme, but constitute independent violations of §1125(a)(1)(B).

### C. *Determination of Statutory Damages for Counterfeit Mark Trademark Infringement*

The Lanham Act prohibits the use of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale ... of any goods or services [where] such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To recover on a federal trademark counterfeiting claim, a plaintiff must show that: (1) the defendant infringed a registered trademark in violation of 15 U.S.C. § 1114; and (2) the defendant intentionally used the mark knowing it was a counterfeit as the term counterfeit is defined in 15 U.S.C. § 1116.  15 U.S.C. § 1117(b). Section 1116 defines "counterfeit mark" as

"a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." 15 U.S.C. § 1116(d)(1)(B)(i). Elsewhere, the statute defines "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

The Court decides the issue of counterfeiting and statutory damages under 15 U.S.C. § 1117(a). *Tobinick v. Scripps Clinic Med. Group, Inc.,* 81 F. App'x 677, 679 (9th Cir. 2003) (because counterfeiting was only relevant to the issue of statutory damages under 15 U.S.C. § 1117(c), a matter within the sole province of the court, the district court did not err by rejecting a jury instruction on counterfeiting.) *Accord Diane Von Furstenberg Studio v. Snyder*, 1:06CV1356 (JCC), 2007 WL 3143690 (E.D. Va. Oct. 23, 2007) aff'd, 294 F. App'x 10 (4th Cir. 2008); *Tobinick v. Scripps Clinic Med. Group,* 81 Fed. Appx. 677 (9th Cir.2003); *Int'l Bancorp, L.L.C. v. Societe des Bains de Mer et du Cercle des Etrangers a Monaco,* 192 F.Supp.2d 467, 490-91 (E.D.Va.2002) (awarding statutory damages on a motion for summary judgment). Defendants recognize this by the fact that they did not submit any proposed jury instructions relating to counterfeit mark or statutory damages. Under 15 U.S.C. § 1117(c), Plaintiff may elect statutory damages before final judgment has been entered without the need for a jury determination.

Therefore, as referenced in General Steel's Response to Order to Show Cause (CM-ECF #252), General Steel seeks statutory damages in the alternative in this case, to the extent necessary. *See, e.g., Yahoo! Inc. v. XYZ Companies*, 2011 WL 6072263 at * 8 (S.D.N.Y. Dec. 5, 2011) ("Courts awarding statutory damages under § 1117(c) consider both compensatory and

punitive factors, including (1) the defendants' likely profits; (2) plaintiff's lost revenues; (3) the value of the mark; (4) whether the defendants' infringement was willful; (5) the extent of defendants' cooperation with the court; (6) the scale of defendants' infringement activities; and (7) the deterrent effect of the award, both on defendants and others." The court concluded that "a large damages award would have a deterrent effect on both Defendants and other would-be perpetrators of a similar scheme." awarded maximum damages of $1,000,000 per counterfeit Yahoo! mark per type of service provided, for a total award of $9,000,000 for Defendants' trademark violations prior to October 13, 2008, and $2,000,000 per counterfeit Yahoo! mark per type of service provided, for a total award of $18,000,000, for Defendants' trademark violations after October 13, 2008. (The court cited *UMG Recordings, Inc. v. MP3.Com, Inc.,* No. 00 Civ. 472 JSR, 2000 WL 1262568, at *5–6, 2000 U.S. Dist. LEXIS 13293, at *17–18 (S.D.N.Y. Sept. 6, 2000) ("the potential for huge profits in the rapidly expanding world of the Internet is the lure ... that will also tempt others to [break the law] if too low a level is set for the statutory damages in this case"); *Illinois Tool Works Inc. v. Hybrid Conversions, Inc.*, 817 F. Supp. 2d 1351, 1355-56 (N.D. Ga. 2011) ("Generally, statutory damages [under the Lanham Act] are awarded when no actual damages are proven, or actual damages and profits are difficult or impossible to calculate." *Cable/Home Comm. Corp. v. Network Prods., Inc.,* 902 F.2d 829, 851 (11th Cir.1990). The court has wide discretion in determining an award of statutory damages. *Id.* at 853. Two factors that warrant special consideration are the willfulness of a defendant's conduct and the deterrent value of any sanction imposed. *Id.* The defendant's willful and blatant conduct warranted significant statutory damages award of $500,000 per infringement. It will be shown in

this case that the Defendants conduct and profits warrant a significant award of statutory damages.

### D. *Defendant's Trademark Infringement Defense of "Nominative Fair Use" Is Not Followed in the Tenth Circuit*

Defendants' assert a defense of "nominative fair use" to Plaintiff's trademark infringement claim.  (See, Defendants' proposed jury instruction no. 60).  As legal authority for this instruction, Defendants cite to the Ninth Circuit Civil Jury Instructions.  This defense is not followed in the Tenth Circuit.  *See Gennie Shifter, LLC. v. Lokar, Inc.*, 2010 WL 126181 (D. Colo. Jan. 12, 2010) (Under the doctrine of nominative fair use, a trademark may be used for purposes of "comparison, criticism, or point of reference where it would be impossible to do so without using the mark." *Frontrange Solutions USA, Inc. v. Newroad Software, Inc.,* 505 F.Supp.2d 821, 834 (D.Colo.2007).  Fair use, however, is "not an affirmative defense to trademark infringement but rather goes to ... proof of the likelihood of confusion element of [a] claim."  *Health Grades, Inc. v. Robert Wood Johnson Univ. Hosp., Inc.,* 634 F.Supp.2d 1226, 1242 (D.Colo.2009)); *Health Grades, Inc. v. Robert Wood Johnson Univ. Hosp., Inc.*, 634 F. Supp. 2d 1226, 1241-43 (D. Colo. 2009) ("The Ninth Circuit's "nominative fair use" analysis has not been widely adopted.  In fact, all of the circuit courts that have considered it to date have either rejected the Ninth Circuit's approach outright… The nominative fair use doctrine as stated and applied by the Ninth Circuit is also at odds with recent Supreme Court precedent). Accordingly, Defendants' nominative fair use defense is not an available defense.

### E. *Plaintiff asked for injunctive relief on its trademark infringement claim.*

The Court's Order on summary judgment reflects that it does not appear that General Steel has sought injunctive relief arising out of trademark infringement.  Plaintiff respectfully

submits that it has requested such relief. *See* First Claim for Relief, in ¶¶ 66, 105, and Prayer for Relief § A of its Amended Complaint (CM-ECF # 21) and in the Final Pretrial Order at 2-3 (CM-ECF # 119). Defendants' summary judgment practice did not address this request. For this additional reason, Plaintiff respectfully submits that summary judgment on its trademark infringement claim should not enter.

### F. *Evidence of an unrelated Jefferson County matter should be excluded.*

At deposition, Defendants' counsel inquired about a now-dismissed legal matter filed in Jefferson County, Colorado:

*Q. Are you aware of a recent third degree assault charge against Mr. Knight?*

Any responsive information is wholly irrelevant to this case. Admission of it would be unduly prejudicial, and it should be excluded under Rule 403. Responsive information would not fit the criteria for use under Rules 608 or 609. No evidence of it should be admitted, and counsel should be prohibited from inquiring about it.

### G. *Defendants Should No Longer Be Permitted to Call General Steel Former (or Present) Employees as Witnesses at Trial Regarding General Steel's Business Practices Because Defendants' Unclean Hands Defense is No Longer Viable.*

In their trial witness list dated April 20, 2012 (Defendants' Witness List; CM-ECF #215), Defendants identified 12 former employees of General Steel as witnesses for trial. Because the Court granted summary judgment dismissing Plaintiff's CCPA claim against Defendants and ruled that Defendants' unclean hands defense is therefore moot, these witnesses should no longer be permitted to testify in this case, because any testimony relating to Plaintiff General Steel's business practices is not relevant. *See*, Order (Summary Judgment) dated April 26, 2012 (CM-ECF #233 at 3-4) (dismissing Plaintiff's CCPA claim and holding that the Defendants' unclean

8

hands defense to the CCPA claim is moot), and Minute Order dated April 26, 2012 (CM-ECF #234) (summary judgment on unclean hands defense is moot). The Court also entered an Order on May 4, 2012 (CM-ECF # 242) denying Plaintiff's Motion to Preclude Presentment and Consideration of Evidence and Witnesses Disclosed on October 4, 2011 at Trial, relating to the testimony of former General Steel employees Scott Casey, Bradley DeGraw, and Curtis Noble, as moot, per the above orders (CM-ECF #'s 233 and 234). Accordingly, Defendants should not be permitted to call as a witness at trial any of these witnesses because of these rulings that the unclean hands defense is no longer in this case. Plaintiff has addressed this witness issue in the Trial Brief because the Court discourages motions *in limine*. Plaintiff conferred with Defendants' counsel about this issue prior to filing this Trial Brief, but Defendants' counsel would not confirm that it was no longer going to list these witnesses for trial.

### H. *Ethan Chumley's Auto Accident is Highly Relevant Because He Volunteered Such Evidence as the Reason for his "Severe Memory Loss"*

In their previous Trial Brief (CM-ECF #230) at 9, Defendants claim that evidence of an auto accident that Defendant Chumley was involved in six years ago should be precluded at trial because it would be "bad character" evidence. This auto accident, however, was made highly relevant by Defendant Chumley, and will be important testimony at trial because Defendant Chumley volunteered this as the reason for his claimed "severe memory loss." During the Rule 30(b)(6) deposition taken of Defendant Armstrong Steel on August 17, 2011, Ethan Chumley testified in response to at least 97 questions that he "did not recall" and that he'd done nothing to prepare for the deposition, but "at least he did show up." After an hour of repeatedly answering questions that he "did not recall," Defendant Chumley returned from a 12 minute break in the deposition and gave the following speech:

> Q. So do you just remember it, or do you have it written down somewhere?
> A. I think I have it written down on a sticky note or something.
> Q. Do you recall that, or you're just guessing?
> A. No, I don't recall it. I'd like to just say that I'm not trying to be a difficult witness when I say, "I don't recall." I was in a -- I was in a pretty violent car accident in 2005, where my girl- -- my girlfriend at the time was driving. And we collided with a -- a skyscraper downtown, an unforgiving skyscraper, at over 50 miles an hour. So my memory hasn't been the same. She lost her life. <u>And so I just wanted to be clear with you that when I say I don't recall about simple things such as, you know, business files that I should know about from say, 2006, it's difficult for me to recall things from even a week ago because of my memory.</u> So I would just like to make that clear, that I'm not trying to be difficult, Mr. Fein.

Rule 30(b)(6) Deposition Testimony of Ethan Chumley at 177:20 *et seq.* Defendant Chumley testified that this accident caused him "severe memory loss" yet he had no recollection of any medical treatment relating to this horrific accident that was the reason for his claimed" severe memory loss." Rule 30(b)(6) Deposition Testimony of Ethan Chumley at 183:19-188:15. Accordingly, it will be very relevant to question Defendant Chumley regarding his stated reason for his "severe memory loss" and the circumstances related thereto.

DATED: June 13, 2012   Respectfully Submitted,

/s/ David S. Fein
David S. Fein, Reg. No. 18788
Patrick D. Frye, Reg. No. 30369
Building Services Group, LLC Legal Dept.
10639 Bradford Road
Littleton, CO 80127
Attorneys for Plaintiff

10

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that a true and correct copy of this document was filed and served via the Pacer/ECF System on the day of its filing with the Court upon the following:

Peter C. Lemire
Jacob W. Paul
Leyendecker & Lemire, LLC
5460 S. Quebec St., Suite 330
Greenwood Village, CO 80111
Peter@coloradoiplaw.com
Jake@coloradoiplaw.com

Tiffaney A. Norton
Senter Goldfarb & Rice, L.L.C.
1700 Broadway, Suite 1700
Denver, Colorado 80290
tnorton@sgrllc.com

Paul M. Grant
Grant Kuhn LLC
143 Union Blvd., Ste. 550
Lakewood, CO 80228
pgrant@grantkuhnllc.com

                s/ Adam Walczak