IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01398-PAB-KLM

GENERAL STEEL DOMESTIC SALES, LLC, d/b/a GENERAL STEEL CORPORATION, a Colorado limited liability company,

    Plaintiff,

v.

ETHAN DANIEL CHUMLEY, individually, and
ATLANTIC BUILDING SYSTEMS, LLC, a Delaware corporation, d/b/a ARMSTRONG STEEL CORPORATION,

    Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE AND CERTIFICATION OF FACTS REGARDING CONTEMPT OF COURT**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Amended Motion to Hold Defendants in Contempt for Multiple Violations of the Court's Injunction** [#410] (the "Motion"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and D.C.COLO.LCivR 72.1C., the Motion has been referred to this Court for recommendation [#411]. On September 4, 2013 and September 19, 2013, the Court held Evidentiary Hearings [#418, #419] on the Motion. On October 11, 2013, Plaintiff and Defendants each filed Proposed Findings of Fact and Conclusions of Law [#423, #424]. The Court has reviewed these filings, the evidence submitted by the parties at the Evidentiary Hearings, the entire case file, and the applicable law, and is fully advised in the premises. For the reasons stated herein, the Court certifies the facts set forth below and **RECOMMENDS** that the Motion [#410] be **DENIED**.

## I. Background

The Motion arises from the District Judge's Order enjoining Defendants Ethan Chumley ("Mr. Chumley") and Armstrong Steel (collectively, "Defendants") from: (1) "[f]alsely presenting Armstrong [Steel] as a manufacturer of steel buildings or falsely stating that it fabricates steel buildings;" (2) "[f]alsely stating that General Steel does not provide pregalvanized steel and steel fasteners;" and (3) "[s]tating that Armstrong [Steel] provides 'general steel buildings' or 'general steel construction.'" [#346] at 39. The Court further held: "[T]his injunction is binding upon defendants, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise." *Id.* In the Motion [#410], Plaintiff General Steel ("General Steel") asserts that Defendants have violated the injunction by failing to remove certain online web content. At the Evidentiary Hearings [#418, #419] held on September 4, 2013 and September 16, 2013, the Court admitted exhibits[1] and received testimony from four witnesses: (1) Travis McCain ("McCain"); (2) Mr. Chumley; (3) Ian Curl ("Curl"); and (4) Sean Hakes ("Hakes"). At the conclusion of the hearings, the Court ordered the parties to file Proposed Findings of Fact and Conclusions of Law [#423, #424], which they timely did.

## II. Certified Facts

Pursuant to 28 U.S.C. § 636(e)(6)(B), "[u]pon the commission of any such act . . . (B) in any other case or proceeding under subsection (a) or (b) of this section, or any other statute, where . . . (iii) the act constitutes a civil contempt, the magistrate judge shall

---

[1] The following exhibits were admitted by the Court: Plaintiff's Exhibits 1-3, 5-87, 94-96, 98, 100-03 and Defendants' Exhibits A, B, D, E, G, I. *See Minutes* [#418].

forthwith certify the facts to a district judge . . . ." This case has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) via an Order of Reference entered by the District Judge [#411]. Pursuant to 28 U.S.C. § 636(e)(6), in a civil contempt case:

> [T]he magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before the district judge.

The magistrate judge's contempt authority is limited to certifying the facts to the District Judge. *Big O Tires, LLC v. D & T Auto Sales & Serv., Inc.*, No. 09-cv-01509-MSK-BNB, 2010 WL 1568571, at * 2 (D. Colo. Jan. 8, 2010) (quoting *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 71 (E.D.N.Y. 2008)). The undersigned hereby finds and certifies the following facts that are material to the issue of contempt:

(1) Defendants engaged multiple search engine optimization ("SEO") companies to provide internet advertising services for Armstrong Steel prior to the trial held in July of 2012. *Transcript of Evidentiary Hearing* ("Tr."), *Test. of Mr. Chumley* [#421] at 98.

(2) The Order [#346] imposing the injunction was received by Defendants on May 7, 2013. *Tr., Test. of Mr. Chumley* [#421] at 69.

(3) The Order [#346] included an injunction against both Defendants, Mr. Chumley and Armstrong Steel. *Order* [#346] at 39.

(4) The Order enjoined Defendants from: (1) "[f]alsely presenting Armstrong [Steel] as a manufacturer of steel buildings or falsely stating that it fabricates steel buildings;" (2)

"[f]alsely stating that General Steel does not provide pregalvanized steel and steel fasteners;" and (3) "[s]tating that Armstrong [Steel] provides 'general steel buildings' or 'general steel construction.'" *Order* [#346] at 39.

(5) The Order is also binding on Defendants' officers, agents, servants, employees, attorneys, and persons in active concert or participation with them who receive actual notice of the Order [#346].

(6) Mr. Chumley oversees all of Armstrong Steel's internet advertising, is adept at internet marketing, and built all of Armstrong Steel's websites, which contain hundreds or thousands of pages of content. *Tr., Test. of Mr. Chumley* [#421] at 101, 123, 124. Mr. Chumley's testimony at the hearing was credible.

(7) After receiving the Order [#346], Mr. Chumley spent about a week searching through Armstrong Steel's websites (ArmstrongSteelBuildings.com, ArmstrongSteel.com, ArmstrongBuildings.com, and ArmstrongSteelBuilding.com) page by page to find and remove any language that offended the injunction. *Tr., Test. of Mr. Chumley* [#421] at 70.

(8) After receiving the Order [#346], Mr. Chumley trained Armstrong Steel's staff regarding the language they could not use to sell or market Armstrong Steel's products. *Tr., Test. of Mr. Chumley* [#421] at 70-71.

(9) After receiving the Order [#346], Mr. Chumley also spent approximately two weeks reviewing the advertisements under Armstrong Steel's control on internet search engines Google, Bing, and Yahoo, to remove any offending language. *Tr., Test. of Mr. Chumley* [#421] at 71-72.

(10) Mr. McCain is General Steel's marketing director, oversees its internet advertising, and created all of its extant websites. *Tr., Test. of Mr. McCain* [#421] at 26.

Mr. McCain's testimony at the hearing was credible.

(11) On May 9, 2013, two days after the injunction Order [#346] was entered, Mr. McCain began investigating whether Defendants had complied with the injunction by running targeted internet searches. *Tr., Test. of Mr. McCain* [#421] at 26.

(12) Mr. McCain identified a list of 155 internet URL addresses that he believed violated the injunction by advertising that Armstrong Steel sells general steel buildings. *Tr., Test. of Mr. McCain* [#421] at 40.

(13) URL stands for uniform resource locator. Each internet web page is a particular file, and the URL is the address which allows a user to locate the file. If two URLs are identical, they are duplicate addresses for the same web page. *Tr., Test. of Mr. Curl* [#421] at 166, 167.

(14) On Friday, May 24, 2013, Plaintiff's counsel sent an email to Defendants' counsel stating that General Steel wanted to know what actions Defendants were taking to comply with the Order [#346]. The email included the list of 155 internet URL addresses generated by Mr. McCain. Plaintiff's counsel asked Defendants' counsel to remove offending language from the 155 internet URL addresses. *Tr., Test. of Mr. Chumley* [#421] 75; *Pl.'s Ex. 2* [#414] at 1; *Tr., Test. of Mr. McCain* [#421] at 40; *Defs.' Exs. D, E* [#416] at 2.

(15) Plaintiff's Exhibit 2 is an email string regarding the parties' attempts to meet and confer before Plaintiff filed the original Motion for Contempt [#366] on June 5, 2013. Included in this string is the list of 155 URLs that Plaintiff alleges violated the Order as of May 24, 2013.

(16) Prior to receiving the list in Plaintiff's counsel's email, Defendants were not

aware of these specific alleged violations, and Defendants deny placing the offending language on the pages located through the 155 internet URL addresses. *Tr., Test. of Mr. Chumley* [#421] at 79, 84, 85-86.

(17) The Order [#346] did not require Defendants to provide General Steel with information about their efforts to remove online violations.

(18) After receiving the list, Defendants informed General Steel that they reviewed the 155 internet URL addresses and made efforts to take down any potentially offending references from those addresses. *Pl.'s Ex. 2* [#414] at 1; *Tr., Test. of Mr. Chumley* [#421] at 75, 78, 80.

(19) Defendants did not consider the list of 155 internet URL addresses to contain violations of the Court Order [#346]. Defense counsel stated in an email dated May 28, 2013:

> Furthermore, it appears that not all of the material on the websites falls within the court's injunction. However, out of an abundance of caution, the respective website owners have been contacted and notified of the injunction in the case. We have requested that they remove the phrases in question from their page, and we will work with them to the extent possible to ensure that this occurs. However, since the websites are owned, controlled and operated by third parties, we do not have the authority or ability to unilaterally remove content. Please note that these actions have been taken to make it unambiguously clear that our client has complied and intends to comply with the injunction.

*Defs.' Ex. E* [#416] at 2; *Tr., Test. of Mr. Chumley* [#421] at 80.

(20) Defendants further conveyed their attempts to remove any offending language from the websites in defense counsel's email dated May 30, 2013, seventeen days after entry of the Order [#346]:

> Nonetheless, we notified the webmasters of those websites of the Order and requested that they remove any references to "general steel buildings" or

-6-

> "general steel construction." Given such notification and other actions we have taken to address the concerns set forth in Mr. Fein's May 24, 2013 email, I am puzzled about your continuing allegations that Armstrong Steel and Mr. Chumley are in violation of the Order.

*Pl.'s Ex. 2* [#414] at 1.

(21) Mr. Chumley does not know for certain whether the offending language in the 155 URL addresses was placed by SEO companies hired by Armstrong Steel over "some period of time" prior to entry of the Order [#346], but he conceded that it is possible. *Tr., Test. of Mr. Chumley* [#421] at 86-87.

(22) Defendants did not attempt to contact any of the formerly-engaged SEO companies after receiving General Steel's communication regarding the alleged injunction violations. *Tr., Test. of Mr. Chumley* [#421] at 100-01.

(23) After receiving Plaintiff's counsel's email, Defendants hired Virante, a search engine optimization company that offers a wide range of web services, to examine the 155 URL addresses. *Tr., Test. of Mr. Curl* [#421] at 160.

(24) Mr. Curl, an employee of Virante, is the head of the link removal department there, which analyzes and recommends removals for customers in order to help them avoid penalties for unnatural linking. *Tr., Test. of Mr. Curl* [#421] at 161. Mr. Curl's testimony at the hearing was credible.

(25) A link is an internet address consisting of hypertext. Hypertext contains anchor text that is linked to another website; by clicking on it a user may move from one website to another website on the internet. *Tr., Test. of Mr. Curl* [#421] at 161.

(26) Anchor text is the key word within the hyperlink that is linked to a website. *Tr., Test. of Mr. Curl* [#421] at 167.

(27) Google is an internet search engine which locates information on the internet and lists search results based on an algorithm. The higher a website appears on Google's list of search results, the more likely it is to receive internet traffic. Google polices websites' efforts to artificially enhance their positions on search result lists. Google's algorithm specifically targets and penalizes a website for unnatural linking, which violates Google's webmaster guidelines. *Tr., Test. of Mr. Chumley* [#421] at 80, 88-89, 133-35; *Tr., Test. of Mr. Curl* [#421] at 162.

(28) Unnatural linking has occurred when, for example, links are found in graveyard directories or "bad neighborhoods." The penalties imposed by Google for unnatural linking lower the website's position on Google's search result lists and make it difficult to find the offending website on a list. *Tr., Test. of Mr. Curl* [#421] at 162, 179.

(29) Virante and Mr. Curl were hired by Armstrong Steel to analyze the list of 155 internet URLs to determine if a link to Armstrong Steel was actually on each of the listed websites and to look for the terms specifically enjoined in the Order [#346]: "general steel construction" and "general steel buildings." *Tr., Test. of Mr. Curl* [#421] at 170, 174.

(30) Mr. Curl was also instructed to attempt to remove the alleged violations from the internet, because Defendants did not see a reason to cause a dispute over them and did not believe that the 155 internet URL addresses were beneficial to Armstrong Steel's business. *Tr., Test. of Mr. Chumley* [#421] at 80, 88-89, 162.

(31) Of the 155 internet URLs on the list, Mr. Curl found that there were twenty-six duplicate URLs. He also found that there were 129 unique URLs, which led to a total of twenty-five unique domain names. *Tr., Test. of Mr. Chumley* [#421] at 79, 89-90; *Tr., Test. of Mr. Curl* [#421] at 175-76.

(32)  A domain name is the name of a website that specifies all the other pages within the same website.  *Tr., Test. of Mr. Curl* [#421] at 166-67.

(33)  Each of the twenty-five domain names contained only one listing pertaining to Armstrong Steel.  *Tr., Test. of Mr. Chumley* [#421] at 79; *Tr., Test. of Mr. Curl* [#421] at 175-76.

(34)  Of the twenty-five unique domain names, Mr. Curl found that there were only two active links that referenced Armstrong Steel.  *Tr., Test. of Mr. Curl* [#421] at 176.

(35)  An active link is a link which, when clicked, will take the user to a specific internet web site.  *Tr., Test. of Mr. Curl* [#421] at 209.

(36)  The two active links were on DiverseList.com and Parasaydiran.net.  *Tr., Test. of Mr. Curl* [#421] at 177.

(37)  Mr. Curl found that the remaining twenty-three domain names either did not have a link to ArmstrongSteelBuildings.com or used anchor text unrelated to the Order. As a result, there was no offending language on these twenty-three websites.  *Tr., Test. of Mr. Curl* [#421] at 176-77.

(38)  Armstrong Steel sent emails to the site owners of the domain names associated with the 155 internet URL addresses to request removal of links to Armstrong Steel, but most did not respond.  *Tr., Test. of Mr. Chumley* [#421] at 129-130.

(39) One owner, Mr. Rohan Kumar, responded and asked for compensation for each link to be removed at five dollars per link.  Defendants paid the five dollars per link, and the links were removed.  *Tr., Test. of Mr. Chumley* [#421] at 130.

(40) The network owner of DiverseList.com and Parasaydiran.net, Mr. Robin Gupta, did not respond to Defendants' request, and thus the listings on those two domains could

not be removed by Armstrong Steel. *Tr., Test. of Mr. Curl* [#421] at 177-78.

(41) The DiverseList.com link to ArmstrongSteelBuildings.com was created in approximately November 2011. *Tr., Test. of Mr. Curl* [#421] at 179.

(42) The Parasaydiran.net link to ArmstrongSteelBuildings.com was created on approximately August 3, 2012. *Tr., Test. of Mr. Curl* [#421] at 184.

(43) There are similarities between the DiverseList.com and Parasaydiran.net domain names, specifically in the URL structures and appearances of the web sites. *Tr., Test. of Mr. Curl* [#421] at 177.

(44) The similarities likely occurred because the site owners automatically generated networks of directories by duplicating the same content on various pages. *Tr., Test. of Mr. Curl* [#421] at 177,197.

(45) Automatic generation is the result of network source code which automatically creates multiple web pages or listings. *Tr., Test. of Mr. Curl* [#421] at 167.

(46) On June 5, 2013, General Steel filed its original Motion to Hold Defendants in Contempt for Multiple Violations of the Court's Injunction [#366]. In that motion, General Steel argued that fifty-two of the original 155 alleged URL address violations remained on the internet. [#366] at 3.

(47) The fifty-two alleged URL address violations consisted of a single Armstrong Steel listing on eleven unique domain names. Defendants sent an email to the webmaster for each of the eleven unique domain names requesting that the content be removed, referring to this case number and the Order. *Tr., Test. of Mr. Chumley* [#421] at 141-42.

(48) The content was thereafter removed from nine domain names, thereby reducing the eleven alleged domain name violations to two listings. The remaining two listings were

the same two websites Defendants were working on correcting from the previous list of 155 URLs: DiverseList.com and Parasaydiran.net. *Tr., Test. of Mr. Chumley* [#421] at 144.

(49) Armstrong Steel sent another message to the site owners of DiverseList.com and Parasaydiran.net and asked for removal of listings related to Armstrong Steel. *Tr., Test. of Mr. Curl* [#421] at 178-79.

(50) The site owner of both DiverseList.com and Parasaydiran.net did not respond. *Tr., Test. of Mr. Curl* [#421] at 179, 184; *Tr. Test. of Mr. Chumley* [#421] at 88-89.

(51) Due to the lack of response from the owners of DiverseList.com and Parasaydiran.net, Armstrong Steel blocked all referral traffic from those sites by rejecting any traffic from both links. *Tr., Test. of Mr. Curl* [#421] at 180, 184.

(52) Armstrong Steel also created a web page stating that it is not General Steel. Users who click on links to Armstrong Steel from DiverseList.com and Parasaydiran.net are automatically directed to that page. *Tr., Test. of Mr. Curl* [#421] at 180.

(53) Neither Mr. Curl nor Defendants are able to unilaterally modify or remove content from DiverseList.com or Parasaydiran.net. *Tr., Test. of Mr. Curl* [#421] at 184, 185.

(54) The amount of traffic referred to Armstrong Steel's website from DiverseList.com or Parasaydiran.net was minimal. *Tr., Test. of Mr. Curl* [#421] at 186.

(55) Plaintiff's Exhibit 5 contains a list of website addresses that Plaintiff asserts identify Armstrong Steel advertisements that state Armstrong Steel provides "general steel buildings" or "general steel construction" as of August 14, 2013.

(56) Armstrong Steel sent emails to the site owners of the domain names listed on Plaintiff's Exhibit 5, but most did not respond. *Tr., Test. of Mr. Chumley* [#421] at 129-130.

(57) Of the internet URL addresses listed in Plaintiff's Exhibit 5 that Defendants were

unable to have removed, three URLs on two domains, Parasaydiran.net and Ewhose.com, contained offending language. *Tr., Test. of Mr. Curl* [#421] at 190.

(58) Defendants handled the listing on Ewhose.com similarly to the listings on DiverseList.com and Parasaydiran.net, by sending any referral traffic to a page stating that Armstrong Steel is not General Steel. *Tr., Test. of Mr. Curl* [#421] at 190.

(59) Defendants had a YouTube account with Google for three years, which includes time both prior to and after entry of the Order. After Plaintiff told Armstrong Steel that its YouTube posting contained language which violated the Order, Armstrong Steel changed the language of the YouTube posting.[2] *Tr., Test. of Mr. Chumley* [#421] at 107, 146; *Tr., Test. of Mr. Curl* [#421] at 193.

(60) The YouTube video with the alleged description violation was uploaded three years ago. *Tr., Test. of Mr. Chumley* [#421] at 125-26.

(61) Plaintiff's Exhibit 94 is a list of ninety-eight internet URL addresses that Plaintiff asserts contain Armstrong Steel advertisements stating that Armstrong Steel is a "leading steel building manufacturer" as of August 14, 2013.

(62) The list of ninety-eight URLs in Plaintiff's Exhibit 94 contains fifteen different links on fifteen different websites, including Defendants' YouTube account. *Tr., Test. of Mr. Curl* [#421] at 193.

(63) The websites in Exhibit 94 may have scraped the videos from Defendants' YouTube account. *Tr., Test. of Mr. Chumley* [#421] at 108-09, 145-46.

(64) Scraping occurs when a site uses a crawler to crawl the code, copy it, and use

---

[2] The date on which this occurred is unclear.

it elsewhere, such as on another website. *Tr., Test. of Mr. Curl* [#421] at 168.

(65) Defendants sent Digital Millenium Copyright Act ("DMCA") letters, which are used to seek removal of video links and associated text from another website, to the remaining fifteen websites, resulting in the content being taken down.[3] *Tr., Test. of Mr. Chumley* [#421] at 109, 110, 137, 157, 194-95.

### III. Analysis

### A. Whether Defendants Disobeyed the Order

It is well-settled that "[a] district court has broad discretion in using its contempt power to require adherence to court orders." *United States v. Riewe*, 676 F.2d 418, 421 (10th Cir. 1982). Civil contempt has a remedial objective and seeks to compel future compliance with Court Orders. *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 827-28 (1994). To hold a party in civil contempt, the Court must find, by clear and convincing evidence,[4] that (1) a valid Court Order existed; (2) the contemnor had knowledge of that Order; and (3) the contemnor disobeyed the Order. *FTC v. Kuykendall*, 371 F.3d 745, 756-57 (10th Cir. 2004). Plaintiff has the burden of proof by clear and convincing evidence that these elements are met. *Id.* Here, there is no dispute that a valid Court Order existed and that Defendants had knowledge of that Order. *See* [#424] at 13. Thus, a finding of contempt depends on the third element, i.e., on whether Plaintiff has

---

[3] The date by which the content was removed is unclear.

[4] "Clear and convincing evidence is evidence that places in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." *United States v. Valenzuela-Puentes*, 479 F.3d 1220, 1228 (10th Cir. 2007) (internal quotation marks omitted) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). This higher standard is in contrast to a preponderance of the evidence, which means that the evidence, considered in light of all the facts, proves that something is more likely so than not so. *Harvey v. Gen. Motors Corp.*, 873 F.2d 1343, 1350 (10th Cir. 1989).

provided clear and convincing evidence that Defendants violated the Order.[5]

General Steel asserts that Defendants violated the Order in three ways. *Motion* [#410] at 4-7. First, as of August 14, 2013, Plaintiff asserts that there remained thirty-nine URL addresses live on the internet stating that Armstrong Steel provides general steel buildings and containing links to Armstrong Steel's websites, all but one of which had active links as of September 4, 2013. *Pl.'s Exs. 5, 6-87, 101* [#414] at 2-13; *Tr., Test. of Mr. McCain* [#421] at 28-32, 34-35. Second, prior to the Court's August 21, 2013 hearing, Plaintiff investigated whether Armstrong Steel had placed advertisements on the internet falsely stating that Armstrong Steel fabricates steel buildings. Using a Google search, Plaintiff's marketing director discovered one advertisement on Defendants' own website which he believed violated a portion of the Order and which he asserts was live as of September 4, 2013. *Tr., Test. of Mr. McCain* [#421] at 36-37, 48; *Pl.'s Ex. 98* [#414] at 13 (stating "Each piece of steel we fabricate . . ."). Third, prior to the Court's August 21, 2013 hearing, Plaintiff investigated whether Armstrong Steel had placed advertisements on the internet that held the company out as a manufacturer of steel buildings. Using a Google search, Plaintiff's marketing director discovered ninety-eight URLs on the internet which he believed violated a portion of the Order, all of which he asserts were live on the internet as of September 3, 2013.[6] *Tr., Test. of Mr. McCain* [#421] at 38-39, 48; *Pl.'s Exs. 102, 103* [#414] at 14.

---

[5] The Court notes that Defendants admit to one specific violation of the injunction relating to Armstrong Steel's video on YouTube. [#424] at 16. The following discussion in this section does not include this admitted violation, which the Court addresses in Section III.B. below.

[6] To be clear, Plaintiff's Exhibit 102, dated September 3, 2013, is the updated version of Plaintiff's Exhibit 94, dated August 14, 2013. Both exhibits list the URL addresses that Plaintiff asserts state that Armstrong Steel is a leading steel building manufacturer.

The Court begins its discussion with the second group. General Steel argues that a statement on Defendants' own website violates the first prong of the injunction, i.e., that Defendants may not falsely present Armstrong Steel as a fabricator of steel buildings. *See* [#423] at 6; *Order* [#346] at 39. The statement at issue is as follows: "Each piece of steel we fabricate is representative of our experience, know-how and cutting edge technology." [#423] at 6; *see e.g.*, *Pl.'s Ex. 98* [#414] at 13.

In evaluating whether this statement violates the injunction, the following observations are pertinent. First, the injunction Order referred to this language and specifically held that, as of the dates of the web pages submitted into evidence (February 1, 2010; September 14, 2011; February 16, 2012), Armstrong Steel did not fabricate any steel. [#346] at 6, 10, 11. Second, the Order noted other false statements that were not subsequently enjoined. For example, Defendants' website stated on February 1, 2010 that Armstrong Steel had an "onsite, environmentally-controlled painting facility," and the Court found that it was undisputed that Armstrong Steel did not have an on-site painting facility. *Id.* at 6. As another example, Defendants' website stated that "[o]ur facilities utilize laser precision engineering," but the Court found that there was no evidence that Armstrong Steel had onsite facilities that utilized laser precision engineering. *Id.* Thus, although the Court found that certain statements were false, the injunction Order [#346] did not explicitly enjoin all such statements.

The Order specifically enjoins Defendants from stating that Armstrong Steel fabricates steel buildings. This injunction "must not be read in the light most favorable" to General Steel, "but rather must be strictly construed." *Kuykendall*, 371 F.3d at 760 (citing *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 371 (10th Cir. 1996)).

This is "to ensure [that the injunction] is clear enough to place [Defendants] on notice of what [they] must do to comply." *Kuykendall*, 371 F.3d at 761 (citing *United States v. Voss*, 82 F.3d 1521, 1526 (10th Cir. 1996)). In light of this mandate, the Court cannot find as a matter of law that Defendants' statement that Armstrong Steel fabricates "steel" is encompassed by the injunction regarding the fabrication of "steel buildings." *See Kuykendall*, 371 F.3d at 761 (stating that "[a]ny ambiguities should be read in the light most favorable" to the enjoined parties). Therefore, this statement from Defendants' website, as reflected in Exhibit 98, is not enjoined by the Order [#346]. *See Pl.'s Ex. 98* [#414] at 13.

Turning to the first and third groups listed above, General Steel's arguments regarding both are also unsuccessful. Assuming *arguendo* that the language on these websites is prohibited by the injunction, General Steel's assertion that Defendants violated the injunction fails because of the lack of clear and convincing evidence that this language was placed by Defendants or by anyone else on whom the injunction is binding. General Steel has not met its burden of proof by demonstrating that these websites are directly or indirectly under the control of Defendants. *See, e.g.*, *Tr., Test. of Mr. McCain* [#421] at 48 (stating that Mr. McCain did not do any research into the ownership of the websites in question); *Tr., Test. of Mr. Chumley* [#421] at 146-48 (repeatedly stating that neither Defendants nor anyone associated with, hired by, or otherwise retained by Defendants placed videos on a number of websites). Citing to the evidence, General Steel merely asserts that: "Defendants conceded that it is possible that the violating advertising was placed by SEO companies hired by Armstrong [Steel] for 'some period of time;'" that "[i]t is also possible that Defendants placed the advertisements themselves;" that "there was some allusion in the evidence to the effect that a portion of the advertisements could have

been created automatically via 'scraping;'" and that "Mr. Curl at first testified that Defendants owned none of the sites he had examined, but then admitted that he 'did not check' them all." [#423] at 12, 12 n.9 (citations omitted).  These possibilities and uncertainties are not enough to create an "abiding conviction" that it is "highly probable" that Defendants were responsible for placement of the offending language on the internet. *Valenzuela-Puentes*, 479 F.3d at 1228.  The Court therefore finds that General Steel has failed to meet its burden of proving that Defendants violated the injunction by using prohibited language on the websites at issue.  *See Kuykendall*, 371 F.3d at 763 ("Though [civil] contempt proceedings may have somewhat diluted procedural requirements, they do not lessen the need for clear and convincing evidence of [an enjoined party's] liability.").

Accordingly, other than the one violation to which Defendants admit and which the Court addresses below, the Court finds that General Steel has failed to provide clear and convincing evidence that Defendants violated the injunction.

**B.      Defendants' Defense to Noncompliance**

As mentioned above, Defendants admit to one violation of the injunction in connection with Defendants' YouTube video. *See* [#424] at 11.  Once a prima facie case is established, the alleged contemnor must produce evidence explaining his noncompliance.  *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998) (citations omitted); *see also* 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2960 at 381-82 (2d ed. 1995).  As of August 14, 2013, Defendants' YouTube page stated that Armstrong Steel was one of the leading steel building manufacturers in North America. *Tr., Test. of Mr. Chumley* [#421] at 106-07.  Mr. Chumley testified that  prior to Plaintiff bringing the YouTube page to his attention, he did not examine it because he "was so overwhelmed

-17-

with the website content that the YouTube slipped [his] mind." *Id.* at 107. Mr. Chumley testified that, as soon as the YouTube video was brought to his attention, the language on the YouTube page was changed to comply with the injunction. *Id.* Thus, although there was no testimony regarding the exact date this change occurred, it was manifestly completed prior to the evidentiary hearing on September 4, 2013. *Tr., Test. of Mr. Curl* [#421] at 193.

General Steel asserts that Defendants could have been aware of this violation if they had been more proactive about complying with the injunction. While the Court agrees that Defendants should have known about their YouTube posting's violation and complied with the Order immediately, it is clear that Defendants took action to correct the violation once General Steel brought it to their attention. Accordingly, there is no clear and convincing evidence that Defendants consciously and deliberately flouted the injunction with respect to this posting, especially in light of Defendants' actions in taking other reasonable steps to ensure compliance with the Order. *See Hart's Rocky Mtn. Retreat, Inc. v. Gayhart*, No. 06-cv-01235-WDM-BNB, 2007 WL 2491856, at *2 (D. Colo. Aug. 29, 2007). Indeed, given Defendants' efforts to remove offending language from the internet, deliberate disregard of the YouTube video cannot reasonably be inferred from the evidence. Setting aside mere conjecture, the evidence leads to the inescapable conclusion that Defendants violated the injunction in this one regard in good faith, which "may absolve [them] of wrongdoing." *Id.* The Court further notes that there was no clear and convincing evidence of any specific damage sustained by Plaintiff or of any specific benefit obtained by Defendants as a result of this particular violation. Accordingly, the Court cannot find that Defendants' failure to sooner correct this single violation was willful or done in bad faith.

In light of the Court's findings above, the Court also finds that Plaintiff's requests for entry of sanctions against Defendants and for an award of attorney's fees in connection with this Motion should be **denied**.

### IV. Conclusion

In accordance with 28 U.S.C. § 636(e)(6) and in view of the certified facts,

IT IS HEREBY **RECOMMENDED** that the Motion [#410] be **DENIED**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions, *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: November 15, 2013

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge