IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-01398-PAB-KLM

GENERAL STEEL DOMESTIC SALES, LLC,
d/b/a General Steel Corporation, a Colorado limited liability company,

    Plaintiff,

v.

ETHAN DANIEL CHUMLEY, individually, and
ATLANTIC BUILDING SYSTEMS, LLC, a Delaware corporation,
doing business as Armstrong Steel Corporation,

    Defendants.

## ORDER

This matter is before the Court on Plaintiff's Motion for Award of Prejudgment Interest [Docket No. 364] and the Motion to Alter or Amend Judgment Concerning Disgorgement Amount [Docket No. 365] filed by plaintiff General Steel Domestic Sales, LLC, doing business as General Steel Corporation ("General Steel").

## I. BACKGROUND

On May 7, 2013, the Court ruled in favor of General Steel on its claim for false advertising under the Lanham Act, 15 U.S.C. § 1051 *et seq*., and against General Steel on its claims for trademark infringement and unfair competition. Docket No. 346 at 19-22, 31. The Court enjoined defendants Ethan Daniel Chumley and Atlantic Building Systems, LLC, doing business as Armstrong Steel Corporation ("Armstrong"), from engaging in the specific misrepresentations for which they were found liable and

awarded General Steel disgorgement of Armstrong's profits in the amount of $243,462.00, as well as costs. *Id*. at 39.

The Court found that Armstrong engaged in false advertising from mid-August 2010 through mid-February 2012. Docket No. 346 at 38. The Court further found that "there was no credible evidence at trial regarding Armstrong's gross or net earnings in 2011 or 2012." *Id*. Accordingly, the Court calculated disgorgement based on Armstrong's earnings for the four-and-a-half months in 2010 during which it was disseminating false advertisements. *Id*.

Plaintiff moves the Court to amend its judgment on the basis that there was evidence at trial establishing Armstrong's 2011 and 2012 profits. Docket No. 365. Plaintiff further moves the Court to amend its judgment to include an award of prejudgment interest. Docket No. 364. Defendants oppose these motions. Docket Nos. 382 and 383.

## II. STANDARD OF REVIEW

A party is entitled to relief under Rule 59(e) on the basis of "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Devon Energy Production Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1212 (10th Cir. 2012) (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *see also Sithon Maritime Co. v. Holiday Mansion*, 177 F.R.D. 504, 505 (D. Kan. 1998) ("Appropriate circumstances for a motion to reconsider are where the court has obviously misapprehended a party's position on the facts or the law, or the court has

mistakenly decided issues outside of those the parties presented for determination.").

"Clear error" is a "decision or action that appears to a reviewing court to have been unquestionably erroneous." Black's Law Dictionary 582 (8th ed. 2004).

## III. ANALYSIS

### A. Disgorgement Award

Plaintiff argues that the Court should amend its judgment in light of (1) Mr. Chumley's testimony that Armstrong's gross sales in 2011 totaled eight million dollars and (2) the testimony of plaintiff's expert, Gregory Taylor, that Armstrong's business grew in 2011 and that Mr. Chumley improperly took money out of the business for his personal use. Docket No. 365 at 2-5. Defendants counter that this testimony is insufficient to support a Rule 59 motion. Docket No. 383 at 2-3.

At trial, Mr. Chumley had the following exchange with plaintiff's counsel while testifying:

> A. . . . it's only been recently that I have realized [my administrative assistant] is ill equipped at handling the books for a $10 million a year company. But as far as us categorizing things wrong, that could be possible, but the fact is every dollar is accounted for.
> Q. So am I correct you just said that currently you are a $10 million a year gross sale company?
> A. That's–yeah.
> Q. Am I correct that your testimony was that Armstrong Steel's gross sales for 2010 were between three to $4 million, correct?
> A. Correct.
> Q. So 2011, what were your gross sales?
> A. Close to $10 million.
> Q. So you went from?
> A. 1 million to three–
> Q. 2009, for the partial year, although we will look at that later with your tax returns says 520. 1 million is your testimony in '09.
> A. Yes.
> Q. Three to 4 million in 2010? 10 million in 2011?

      A. No, I would estimate probably eight.

Docket No. 340 at 48, ll.4-24. Mr. Taylor testified that "[a]ll we have is six months of bank statements which indicate actually the company is bigger and has more sales than it had historically in 2009 or 2010," Docket No. 340 at 148, ll.16-18, and that "it appears the company is actually growing and doing more business in 2011 than it did in 2010." *Id*. at 148, ll.22-24. He further testified that "[t]his is a situation where these accounting records frankly indicate that the profit of this company is much higher and the profit to Mr. Chumley, as the owner of this closely held company, is much higher than the amount shown on Schedule 1," Docket No. 340 at 147, l.24 to 148, l.3, and that, taking into account the apparent personal expenses charged to Atlantic by Mr. Chumley, "it could be that the profits of this company end up being, you know, for 2009 and 2010 and 2011, we are talking about $5 million, 4 to $5 million, and through the first part of 2012." *Id*. at 150, ll.16-19.

      Without discussing the standard for relief under Rule 59, General Steel asserts that the Court erred because the testimony cited above constitutes credible evidence of Armstrong's gross sales in 2011 and 2012. Docket No. 365 at 2-3. General Steel relies in particular on the 2000 Advisory Committee notes to Federal Rule of Evidence 701, which state that "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business . . . . because of the particularized knowledge that the witness has by virtue of his or her position in the business."

      As defendants point out, however, Docket No. 383 at 3, the admissibility of Mr. Chumley's testimony on the subject of Armstrong's past profits does not bear on the credibility of that testimony. *See* 1 Jones on Evidence § 1:6 (7th ed.) (distinguishing

between evidence that is merely admissible and evidence that "meets the requirements of proof in a given case"). As the passage quoted above illustrates, Mr. Chumley's testimony does not represent a precise or considered valuation, but is rather in the nature of an estimate or guess. Likewise, Mr. Taylor's testimony lacked numerical specificity, indicating only that Armstrong's business grew in 2011 and 2012 and providing a rough estimate of what Armstrong's profits might have been absent the allegedly improper deductions.

"Courts have wide discretion to fashion appropriate equitable remedies such as disgorgement of profits." *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1163 (10th Cir. 2013); *see also United States SEC v. Maxxon, Inc.*, 465 F.3d 1174, 1179 (10th Cir. 2006) ("Disgorgement is by nature an equitable remedy as to which a trial court is vested with broad discretionary powers.") (internal citation omitted).

The Court found that the trial testimony of Mr. Chumley and Mr. Taylor regarding Armstrong's 2011 and 2012 sales was too unstable a foundation on which to base a disgorgement award. General Steel argues that the Court *could* have found the testimony of Mr. Chumley and Mr. Taylor credible on this matter. Docket No. 365 at 7. However, General Steel's motion does not establish any "need to correct clear error or prevent manifest injustice," *Devon Energy Production Co.*, 693 F.3d at 1212, especially given the wide latitude afforded a district court in crafting a disgorgement remedy. *See Klein-Becker*, 711 F.3d at 1163.

### B. Prejudgment Interest

General Steel argues that the Court should amend its judgment to add an award

of prejudgment interest because (1) it is common practice in the Tenth Circuit to award prejudgment interest on federal claims; (2) the Court found that defendants willfully disseminated false advertisements; and (3) the disgorgement award reflects defendants' profits during only a portion of the time when defendants engaged in false advertising.  Docket Nos. 364 and 394.  Defendants counter that an award of prejudgment interest is inappropriate given that General Steel did not prove that it lost profits as a result of Armstrong's conduct.  Docket No. 382 at 3, ¶ 4.

An award of prejudgment interest falls within the discretion of the district court. *Resolution Trust Corp. v. Fed. Sav. & Loan Ins. Corp.*, 25 F.3d 1493, 1506 (10th Cir. 1994).  Under federal law, the purpose of awarding prejudgment interest "is to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of judgment." *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1256 (10th Cir. 1988) (overruling on other grounds recognized by *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231 (10th Cir. 1996)).  Prejudgment interest is available under the Lanham Act. *See United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1237 (10th Cir. 2000).  The Tenth Circuit applies a two-part test to determine whether an award of prejudgment interest is warranted on a federal claim. *Touche Ross*, 854 F.2d at 1257.  First, the court must consider whether awarding prejudgment interest "would serve to compensate the injured party." *Id*.  Second, the court must determine whether the equities favor awarding prejudgment interest. *Id*.  Courts have declined to allow prejudgment interest on awards disgorging a defendant's lost profits where the plaintiff has failed to show that it would have enjoyed

those same profits, absent the unlawful conduct. *Clearline Technologies Ltd. v. Cooper B-Line, Inc.*, 2013 WL 2422581, at *17 (S.D. Tex. June 3, 2013).

The Court found that General Steel failed to establish actual damages stemming from Armstrong's false advertising. Docket No. 346 at 29-30. The Court's award was thus based on a presumption that Armstrong's false comparative advertising harmed General Steel, as well as a finding that Armstrong's Lanham Act violations were willful, supporting "a disgorgement award to deter future misconduct." *Id*. at 30-31, 36. Since the disgorgement award was not designed to compensate General Steel for lost profits, and since there is no evidence that, but for the false advertising, General Steel would have earned the disgorged profits, there is no basis for finding that an award of prejudgment interest would compensate General Steel. *See Touche Ross*, 854 F.2d at 1256; *Clearline Technologies*, 2013 WL 2422581, at *17.

The facts of this case do not satisfy the first prong of the two-part test for awarding prejudgment interest and thus General Steel has not established that the denial of prejudgment interest constitutes clear error or causes manifest injustice. *See Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.*, 532 F.3d 1063, 1074-75 (10th Cir. 2008) ("we must determine whether prejudgment interest is supported under 'compensatory principles' and 'fundamental considerations of fairness'") (internal citation omitted); *Devon Energy Production Co.*, 693 F.3d at 1212.

**IV. CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Award of Prejudgment Interest [Docket No.

364] filed by plaintiff General Steel Domestic Sales, LLC, doing business as General Steel Corporation, is DENIED.  It is further

**ORDERED** that the Motion to Alter or Amend Judgment Concerning Disgorgement Amount [Docket No. 365] filed by General Steel is DENIED.

DATED February 27, 2014.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge