IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-01398-PAB-KLM

GENERAL STEEL DOMESTIC SALES, LLC,
d/b/a General Steel Corporation, a Colorado limited liability company,

    Plaintiff,

v.

ETHAN DANIEL CHUMLEY, individually, and
ATLANTIC BUILDING SYSTEMS, LLC, a Delaware corporation,
doing business as Armstrong Steel Corporation,

    Defendants.

## ORDER

This matter is before the Court on Defendants' Motion to Amend Judgment [Docket No. 363] filed by defendants Ethan Daniel Chumley and Atlantic Building Systems, LLC, doing business as Armstrong Steel Corporation ("Armstrong"). Defendants filed this motion pursuant to Federal Rule of Civil Procedure 59(e), under which a court may alter or amend its judgment upon filing of a motion within twenty-eight days of the entry of judgment.

A party is entitled to relief under Rule 59(e) on the basis of "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Devon Energy Production Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1212 (10th Cir. 2012) (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *see also*

*Sithon Maritime Co. v. Holiday Mansion*, 177 F.R.D. 504, 505 (D. Kan. 1998) ("Appropriate circumstances for a motion to reconsider are where the court has obviously misapprehended a party's position on the facts or the law, or the court has mistakenly decided issues outside of those the parties presented for determination."). "Clear error is established if, after reviewing all the evidence, [the reviewing court is] left with a definite and firm conviction that a mistake has been made." *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1149 (10th Cir. 2009) (internal citation omitted).

Defendants argue that the Court clearly erred in (1) finding that Armstrong made false statements in its comparative advertising regarding the availability of pregalvanized steel and stainless steel fasteners; (2) describing Mr. Chumley's responsibility for generalsteelscam.com; (3) finding that Armstrong's comparative advertising included statements that it fabricated steel and that it sold "general steel" buildings; and (4) awarding disgorgement of Armstrong's profits to plaintiff General Steel Domestic Sales, LLC, doing business as General Steel Corporation ("General Steel"). The Court considers each of these arguments in turn.

## I. ANALYSIS

### A. Pregalvanized Secondary Framing and Stainless Steel Fasteners

Defendants argue that the Court erred in finding that Armstrong's advertisements were literally false insofar as they compared Armstrong and General Steel on the basis of the availability of pregalvanized secondary framing and stainless steel fasteners.[1] Docket No. 363 at 8. Defendants argue that their comparative advertising on this point

---

[1] The Court notes that these are the terms used in the advertisements in Exs. 10 and 11. All citations to exhibits refer to the exhibits introduced at trial.

was literally true because Armstrong includes these features unless customers decline them while General Steel does not include these features unless they are requested. *Id*.

The advertisements at issue do not draw the fine distinction upon which Armstrong relies. Rather, they simply list "Pre Galvanized Secondary Framing" and "Stainless Steel Fasteners" beneath Armstrong's logo and do not list these features beneath General Steel's logo. Ex. 10 and 11. The clear import of the advertisement is that these features are available in Armstrong buildings, but not available in General Steel buildings. The evidence at trial established that this implication is false because both companies provide these features at additional cost. *See* Docket No. 363 at 6-8. That these features may be accounted for in Armstrong's–but not in General Steel's–initial price quotation does not render the advertisement true, nor does it undermine the Court's conclusion that both companies provide these features if customers are willing to pay more for them. The advertisement does not use the term "standard" or explain that General Steel customers may also obtain these features.

Accordingly, defendants have not shown clear error on this basis.

**B. generalsteelscam.com**

Defendants argue that the Court erred in stating in its Conclusions of Law that it had found that "Mr. Chumley was responsible for creating a website entitled generalsteelscam.com" because this finding is not clearly set forth in its Findings of Fact. Docket No. 363 at 8-9.

Defendants' underlying assumption appears to be that the only findings of fact

supporting the Court's conclusion regarding Mr. Chumley's responsibility for creating generalsteelscam.com is paragraph 22 of the Court's Order. That assumption is incorrect. Paragraphs 6, 9, and 23 consist of findings that Mr. Chumley used false emails, press releases, and articles to disparage General Steel or its employees. The Court found Mr. Chumley's testimony incredible as to two of these incidents. *See* Docket No. 346 at 3-4, 5, ¶¶ 6, 11. The Court's conclusion that Mr. Chumley is responsible for creating generalsteelscam.com was not only based on his admitted use of the website and his intent for using the website (to damage the reputation of General Steel), but on the fact that his responsibility for the website's creation is strongly consistent with his past behavior in using deceptive or misleading mechanisms to undermine General Steel's reputation. His denial of having created the website is also consistent with similar denials, which lack credibility.

Thus, the challenged conclusion does not constitute clear error sufficient to support relief under Rule 59.

### C. Comparative Advertising

Defendants argue that the Court erred in finding that Armstrong's comparative advertising stated that it fabricates steel buildings and that it provides "general steel buildings" and "general steel construction." Docket No. 363 at 9. Comparative advertising is "[a]dvertising that specifically compares the advertised brand with another brand of the same product." Black's Law Dictionary 59 (8th ed. 2004). Courts may presume that a plaintiff has been harmed by false comparative advertising that specifically targets its company or brand, but may not presume injury with respect to non-comparative advertising. *See Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329,

1336 (8th Cir. 1997) ("We find that in comparative advertising cases where money damages are sought and where there exists proof of willful deception, as here, the reasoning of the injunction cases set forth primarily in the Second Circuit cases is applicable. What little case law exists supports the district court's use of the presumption of causation and harm to the plaintiff.").

All of the statements identified by the Court as supporting a disgorgement award appeared on the "May the Best Building Win" webpage, whose Internet address included the phrase "maythebestbuildingwin." Exs. 10 and 11. The phrase "May the Best Building Win" appears as a title at the top center of the webpage, above all other content, in bright red capital letters outlined in bright yellow and in the largest font on the webpage. *Id*. The first full paragraph of text on the webpage explains that "[t]here's really only 2 companies to consider–Armstrong & General Steel. . . . How do the two finest buildings on the market stack up against one another? Take a look and decide for yourself." Ex. 10 at 1; Ex. 11 at 1. Beneath this opening section, the webpage contains multiple paragraphs discussing Armstrong's offerings in which Armstrong states repeatedly that it provides "general steel buildings" and "general steel construction." Ex. 10 at 1-3; Ex. 11 at 1-3.

Defendants argue that the Court should consider statements appearing in latter portions of the "May the Best Building Win" webpage to be different advertisements. *See* Docket No. 363 at 10. This argument is unavailing. All of the statements contained in Exhibits 10 and 11 appear as part of the same comparative advertisement. They are located on the same webpage at the same Internet address, appear beneath the "May the Best Building Win" title and introductory paragraph, and are replete with

5

references to "general steel" buildings and construction.[2]

Thus, the Court did not clearly err in treating this webpage as a single comparative advertisement.

### D. Allocation of Profits

Defendants argue that the Court erred in ordering disgorgement of a portion of Armstrong's profits to General Steel. Docket No. 363 at 11-13.

Under Section 1117 of Title 15, a plaintiff that proves a violation of the Lanham Act "shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." *Id*. Interpreting this language, a number of courts have held that a plaintiff need only establish the defendant's gross sales of an infringing product, or a product that was falsely advertised, in order to shift the burden onto the defendant to show appropriate deductions from those profits. *See, e.g.*, *WMS Gaming Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 608 (7th Cir. 2008); *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 64 (1st Cir. 2008) ("once the plaintiff has shown direct competition and infringement, the statute places the burden on the infringer to show the limits of the direct competition") (internal citations omitted);

---

[2] The Court found that Armstrong's use of the term "general steel" was part of an attempt to "embed search terms in website text" that "merely emphasize[d] the point that Armstrong was targeting General Steel." Docket No. 346 at 15 n.8. Given that the term "general steel" refers to plaintiff General Steel, Armstrong's claims to provide "general steel" buildings can be understood as a false comparative advertisement in which Armstrong is offering itself as an alternative source of its competitor's products.

*Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-07 (1942) ("The burden is the infringer's to prove that his infringement had no cash value in sales made by him. If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner of the mark. There may well be a windfall to the trade-mark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer."); *Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.*, 829 F. Supp. 2d 802, 819 (D. Minn. 2011) ("To be entitled to recover profits, Aviva must only prove Manley's sales of the allegedly falsely advertised products. If Manley fails to prove the sales not due to the allegedly violative conduct, Aviva may be entitled to all of Manley's profits from the allegedly falsely advertised products—subject only to the principles of equity."); *Rexall Sundown, Inc. v. Perrigo Co.*, 707 F. Supp. 2d 357, 363 (E.D.N.Y. 2010) ("the Court finds that, in a Lanham Act false advertising case, where the plaintiff proves all elements on the issue of liability (including causation) and establishes that it is entitled to disgorgement of the defendant's profits, the plaintiff bears the burden of showing only the sales of the violative products. The defendant must establish any deductions, including costs and any apportionment for sales that were not due to the allegedly false or misleading statements."); *but see Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 464-65 (5th Cir. 2001) ("we hold that where a plaintiff who has brought a Lanham Act claim for false advertising has failed to present evidence that the defendant benefitted from the alleged false advertising, the plaintiff will not be permitted to recover any of the defendant's profits

under 15 U.S.C. § 1117(a)"). The Court finds the reasoning of *Aviva Sports* and *Rexall Sundown* persuasive.

Defendants rely on the statement in *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), that the "plaintiff has only the burden of establishing the defendant's gross profits from the infringing activity with reasonable certainty" to support the proposition that General Steel was required to show "with reasonable certainty" that defendants' profits flowed directly from its false comparative advertising. Docket No. 363 at 11-12. Defendants do not, however, cite the sentences that immediately follow their *Lindy Pen* citation: "Once the plaintiff demonstrates gross profits, they are presumed to be the result of the infringing activity. The defendant thereafter bears the burden of showing which, if any, of its total sales are not attributable to the infringing activity, and, additionally, any permissible deductions for overhead." *Id*. *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 712 (9th Cir. 1999) (internal citation omitted), is not persuasive since, in that case, the court was confronted with undisputed evidence that the profits sought by the plaintiff derived from both permissible and impermissible conduct.[3]

At trial, there was evidence from both parties that Armstrong's internet

---

[3] Nor is the Court persuaded by defendants' citations to *Mahroom v. Best Western Int'l, Inc.*, 2009 WL 2216578, at *10 (N.D. Cal. July 22, 2009) (denying an award of actual damages in part based on plaintiff's inequitable conduct); *Hansen Beverage Co. v. Vital Pharma., Inc.*, 2010 WL 3069690, at *9 (S.D. Cal. Aug. 3, 2010) (denying disgorgement award because of lack of evidence that profits were a proxy for lost sales, that infringement was willful, and that award would serve goal of deterrence); *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 361-62 (9th Cir. 1996) (overturning jury's compensatory damages award because plaintiff failed to show he was injured by infringement).

advertising has been highly effective and has generated tens of thousands of leads for Armstrong; that Armstrong invested ninety percent of its advertising budget in internet advertising; that "general steel" is the third most common search term in the industry, supporting an inference that the May the Best Building Win webpage would frequently appear in the list of organic search results of consumers searching for information regarding General Steel; that Armstrong's profits rose during the time it disseminated its false advertising; and that Armstrong persisted in making false statements, even after litigation had begun. This evidence, taken together, is sufficient to show a link between Armstrong's false advertising and its profits derived from selling falsely advertised buildings.

Defendants argue that the expert report of Chris Kidwell, Ex. A-1, constitutes evidence that its comparative advertising generated only 7.5% of its leads. Docket No. 363 at 12-13. However, Mr. Kidwell concluded that 7.5% of Armstrong Steel's traffic was "a result of paid search advertising directed towards searchers using queries related to the General Steel brand." Ex. A-1 at 3. The comparative advertising at issue here was not part of Armstrong's paid search advertising, but was instead displayed on Armstrong's own website. Thus, Mr. Kidwell's report does not support defendants' argument.

## II. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion to Amend Judgment [Docket No. 363] is DENIED.

DATED February 27, 2014.

                                      BY THE COURT:

                                      s/Philip A. Brimmer
                                      PHILIP A. BRIMMER
                                      United States District Judge