IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-01398-PAB-KLM

GENERAL STEEL DOMESTIC SALES, LLC,
d/b/a General Steel Corporation, a Colorado limited liability company,

    Plaintiff,

v.

ETHAN DANIEL CHUMLEY, individually, and
ATLANTIC BUILDING SYSTEMS, LLC, a Delaware corporation,
doing business as Armstrong Steel Corporation,

    Defendants.

---

**ORDER**

---

This matter is before the Court on the Motion for Award of Attorneys' Fees filed by plaintiff General Steel Domestic Sales, LLC, doing business as General Steel Corporation ("General Steel") [Docket No. 354]; the Motion for Leave to Supplement Motion for Award of Attorneys' Fees [Docket No. 355] filed by General Steel; Defendants' Motion for Award of Attorney's Fees and Costs Pursuant to Fed. R. Civ. P. 54(d)(2) and D.C.Colo.LCivR 54.3 [Docket No. 357] filed by defendants Atlantic Building Systems, LLC, doing business as Armstrong Steel Corporation ("Armstrong") and Ethan Chumley; and Defendants' Motion to Strike Plaintiff's Expert Report or for Alternative Relief [Docket No. 391].

**I. GENERAL STEEL'S MOTION FOR ATTORNEY'S FEES**

The Lanham Act provides that a court "in exceptional cases may award

reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). An award of fees falls within the district court's discretion. *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir. 2000). "The Lanham Act does not define what is an 'exceptional' case, but we have determined it occurs when a trademark infringement is malicious, fraudulent, deliberate, or willful." *Id*. The Tenth Circuit has upheld an award of fees where the lower court found that the defendant had deliberately labeled its product with plaintiff's mark, "even after repeated warnings to stop doing so," had actually deceived plaintiff's customers, and had persisted in its infringement "even after agreeing to stop doing so in [a] settlement agreement." *Id*.

The "absence of actual damages is a factor in determining whether a case is exceptional," although "such an absence does not preclude a fee award." *Bishop v. Equinox Int'l Corp.*, 154 F.3d 1220, 1224 (10th Cir. 1998); *see also VIP Foods, Inc. v. Vulcan Pet, Inc.*, 675 F.2d 1106, 1107 (10th Cir. 1982) (relying in part on lack of "ascertainable damage" in denying award of fees under the Lanham Act). "[T]he award of monetary relief pursuant to 15 U.S.C. § 1117 is subject to equitable considerations." *Bishop*, 154 F.3d at 1224 n.3.

General Steel argues that it is entitled to an award of attorney's fees because the Court "found that Defendants' Lanham Act violations were indeed willful." Docket No. 354 at 1 (citing Docket No. 346 at 31, 33, 36). General Steel requests an award of $666,520 in fees. Docket No. 354 at 2.

Defendants counter that General Steel is not entitled to an award of attorney's fees because (a) it prevailed only with respect to a limited set of statements made by

2

Armstrong; (b) General Steel failed to recover compensatory damages because it could not show actual injury; (c) Armstrong purposely distinguished its buildings from those of General Steel; and (d) the facts suggest that Armstrong's false comparative advertising was not undertaken in bad faith. Docket No. 375 at 2-3.

In entering a disgorgement award against Armstrong, the Court found that

> Armstrong was not only asked by General Steel, but required by the major search engines, to stop using General Steel's name in its advertising. Nonetheless, Armstrong issued new advertisements falsely comparing itself to General Steel and falsely stating that it provides "general steel" buildings. It continued to disseminate these false advertisements even after General Steel brought an administrative claim before the World Intellectual Property Organization and after the close of discovery in this case, showing that enforcement proceedings are not sufficient to deter Armstrong from disseminating false advertising.

Docket No. 346 at 35-36. Thus, despite General Steel's failure to "put on evidence that it lost customers, revenue, or goodwill, or was otherwise harmed" by Armstrong's false statements, *id*. at 29, the Court concluded that "Armstrong's pattern of willful deception betrays a conscious desire to benefit from false statements, which in turn supports a disgorgement award to deter future misconduct." *Id*. at 36. The Court further found that the equities favored General Steel because Armstrong benefitted from its false advertising and because Mr. Chumley "played a lead role in creating and disseminating the false advertisements." *Id*. Accordingly, the Court awarded General Steel $243,462.00. *Id*. at 38.

Although it is not preclusive of a fee award, General Steel's failure to present evidence that it suffered actual damage as a result of defendants' conduct weighs against it in the context of seeking attorney's fees. *See VIP Foods*, 675 F.2d at 1107. General Steel prevailed on only one of its asserted claims based on a limited number of

false statements that defendants published on Armstrong's website. *See generally*, Docket No. 346. Since these statements were made in the context of comparative advertising, the Court presumed that they caused harm and awarded General Steel a considerable sum in disgorged profits. *Id*. at 30. However, given the narrow segment of the asserted claims on which General Steel prevailed, the failure to produce any evidence of damages, and the amount that General Steel has already recovered on the basis of defendants' willful conduct, the Court will not exercise its discretion to award General Steel attorney's fees under the Lanham Act. *See Bishop*, 154 F.3d at 1224.

## II. DEFENDANTS' MOTION FOR ATTORNEY FEES

Defendants argue that they are entitled to attorney's fees because (1) General Steel asserted frivolous claims for dilution and false designation of origin in its initial complaint, Docket No. 357 at 15, ¶ 19; (2) General Steel never produced evidence of actual damages or developed a viable theory of damages as required to support its claim under the Colorado Consumer Protection Act ("CCPA"), *id*. at 8, ¶ 12; (3) General Steel pursued its CCPA claim in order to obtain information it could use to harass defendants, *id*. at 18, ¶ 22; and (4) General Steel failed to prosecute its trademark infringement claims insofar as it put on no evidence of actual consumer confusion. *Id*. at 16, ¶ 20. Defendants seek the attorney's fees expended in defending against General Steel's claims for dilution, false designation of origin, trademark infringement, and violation of the CCPA in the amount of $274,594.09, as well as $3,921.41 in costs. *Id*. at 21.

General Steel responds that (1) defendants did not prevail on the claims that

General Steel voluntarily dismissed, Docket No. 377 at 4 n.1; (2) General Steel obtained evidence of lost consumers but was barred by the Court from presenting that evidence at trial, *id*. at 9; (3) there is no evidence that General Steel's CCPA claim was brought in bad faith, *id*. at 9-10; and (4) General Steel had a factual basis for pursuing its trademark infringement claim. *Id*. at 3-5.

Under the Lanham Act, "an infringement suit could be 'exceptional' for a prevailing defendant because of (1) its lack of any foundation, (2) the plaintiff's bad faith in bringing the suit, (3) the unusually vexatious and oppressive manner in which it is prosecuted, or (4) perhaps for other reasons as well." *Nat'l Ass'n of Professional Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1147 (10th Cir. 2000). "The focus of the analysis is not only on whether the defendant prevailed, or concomitantly, whether the plaintiff lost. Not every losing suit is without foundation, and not every strategic decision by a plaintiff . . . is done for the purpose of harassment or another improper purpose." *Id*. To distinguish "exceptional" from "routine" cases, district courts must consider both "the objective merit or the lack thereof of the plaintiff's case and the likely subjective motivations of the plaintiff as reflected by the trial strategies utilized." *Id*. "[I]t is not enough that the plaintiff does not prevail. Rather, to be an 'exceptional' case within the meaning of the statute, the plaintiff's suit must lack any reasonable foundation." *Id*.

### A. Trademark Infringement Claim

Although General Steel did not ultimately prevail on its claim for trademark infringement, it did succeed in establishing the first two elements of this claim: (1) that it

has a protectable mark in the words "General Steel" and that the phrase has acquired secondary meaning and (2) that Armstrong used the phrase in commerce without its consent.  Docket No. 346 at 12.  It satisfied these elements by presenting evidence at trial regarding the registration of its logo and word mark, its investment in its mark, the strength of its mark, the nature of its products and its advertising strategies, and Armstrong's use of the phrase "General Steel."  See Docket No. 346 at 13-18.

On the third element, a likelihood of confusion, the Court found in General Steel's favor with respect to four of the six relevant factors, none of which are dispositive.  Id. at 16-18; see Utah Lighthouse Ministry v. Foundation for Apologetic Information & Research, 527 F.3d 1045, 1055 (10th Cir. 2008) ("No one factor is dispositive.").  The Court noted that a plaintiff is "not required to bring forth incidents of actual confusion to succeed in an infringement case," Docket No. 346 at 19 (citing Sensient Technologies Corp. v. SensoryEffects Flavor Co., 613 F.3d 754, 768 (8th Cir. 2010)), but concluded that "plaintiff has failed to demonstrate a likelihood of confusion between Armstrong's use of 'General Steel' in the advertising copy of its AdWords campaign and plaintiff's protected word mark" and that "many of the actual uses of the keywords 'general steel' in website text occurred either in the context of a clear comparison or in a context that, while puzzling, was unlikely to confuse consumers as to source."  Docket No. 346 at 19-20, 22-23.

Defendants concede that there was a factual basis for General Steel's trademark infringement claim and that General Steel subjectively believed in the merits of the claim.  Docket No. 357 at 16, ¶ 20 ("As shown by their responses to written discovery and deposition testimony, General Steel's view of the case was that trademark

infringement was obvious."). Defendants argue that General Steel failed to prosecute the claim to a degree that evidences bad faith. Docket No. 357 at 16, ¶ 20; *see also* Docket No. 386 at 5, ¶ 5 ("General Steel half-heartedly prosecuted the Lanham Act infringement claim while at the same time waging a vexatious and oppressive campaign regarding non-substantive matters forcing the Defendants to expend significant resources to defend."). In light of the Court's conclusion that General Steel established a number of important elements of this claim, there is no basis for finding that the claim was maintained in bad faith or that its prosecution was so lacking as to be exceptional. *See Nat'l Ass'n of Professional Baseball Leagues*, 223 F.3d at 1147 ("Not every losing suit is without foundation, and not every strategic decision by a plaintiff in bringing suit and in prosecuting it in a manner to enhance the prospects of success is done for the purpose of harassment or another improper purpose.").

### B. Claim for Dilution Under the Lanham Act

Defendants argue that General Steel's claim for trademark dilution, alleged in its initial complaint, was "unequivocally without merit and [] not supported by the facts recited in the complaint."[1] Docket No. 357 at 15, ¶ 19. As General Steel voluntarily

---

[1] Defendants state that General Steel improperly asserted a claim for false designation of origin; however, such a claim does not clearly appear in the initial complaint and does not appear to have been removed in response to defendants' motion to dismiss. *Compare* Docket No. 1 at 12-13, ¶ 59 ("Defendants' use of the words or names 'general steel,' 'general steel building,' and/or other derivations thereof are likely to cause, and have caused confusion, mistake and/or deception within the steel building industry and the consuming public as to the source, sponsorship or approval of Defendant's product in that consumers are likely to erroneously believe that the Defendants are in some way legitimately connected with, sponsored, licensed by, or otherwise related to General Steel in violation of the Lanham Act, 15 U.S.C. § 1114(1) and 1125(a).") *with* Amended Complaint [Docket No. 21] at 13, ¶ 59 (setting forth identical allegation).

dismissed this claim after defendants filed a motion to dismiss, *see* Docket Nos. 17 and 21, defendants argue that they prevailed on this claim and are thus entitled to recover fees under the Lanham Act expended in preparing the motion to dismiss. Docket No. 357 at 15-16, ¶ 19.

General Steel alleged in its initial complaint that "Defendants' use of the words or names 'general steel,' 'general steel buildings,' and/or other derivations thereof, unlawfully dilute the distinctive quality of the General Steel mark in violation of the Federal Trademark Dilution Act of 1995, Section 43(c) of the Lanham Act. 15 U.S.C. § 1125(c)." Docket No. 1 at 13, ¶ 60. With respect to the general public's recognition of its mark, General Steel alleged that the "words and name General Steel are not merely descriptive or generic. Rather, they are distinctive and have acquired secondary meaning." *Id*. at 4, ¶ 10. It alleged that it spent millions of dollars on national advertising and that "General Steel is the third most searched term in the steel building industry." *Id*. at 4, ¶¶ 16-17. It further alleged that "[c]ustomers throughout the nation know the name General Steel" and that General Steel has "achieved a national reputation." *Id*. at 5, ¶¶ 19, 22.

In their motion to dismiss, filed on August 18, 2010, defendants argued that General Steel failed to state a claim for dilution because it did not plead that its mark was "famous" or "widely recognized by the general consuming public." Docket No. 17 at 4-5, ¶¶ 13-14. On September 10, 2010, one month before the deadline for amending the pleadings, General Steel filed an amended complaint excluding the dilution claim. Docket No. 17 at 12-14; *see* Docket No. 19 at 1.

Given the allegations cited above from the initial complaint, defendants'

argument that the complaint was so lacking as to be exceptional with respect to the first element of trademark dilution is unavailing. The dilution claim set forth in the initial complaint contains factual allegations regarding public awareness of General Steel's mark and thus the complaint is not so defective as to evidence bad faith or another improper purpose that would merit a fee award. *See Nat'l Ass'n of Professional Baseball Leagues*, 223 F.3d at 1147.

### C. Colorado Consumer Protection Act Claim

Defendants argue that they are entitled to an award of attorney's fees under the CCPA because General Steel failed to produce any evidence that it suffered an actual injury and failed to articulate a viable theory of damages. Docket No. 357 at 17-18, ¶¶ 21-22. Defendants further argue that General Steel used its CCPA claim to obtain documents from defendants for the improper purposes of contacting Armstrong's customers and forwarding negative information about Armstrong to the Colorado Attorney General. *Id*.

Any person who brings a CCPA action "that is found by the court to be groundless and in bad faith or for the purpose of harassment shall be liable to the defendant for the costs of the action together with reasonable attorney fees as determined by the court."[2] Colo. Rev. Stat. § 6-1-113(3). "A claim or defense is

---

[2]To prevail on a CCPA claim, a plaintiff must prove that: (1) the defendant engaged in an unfair or deceptive trade practice (2) in the course of the defendant's business (3) that significantly impacted the public as actual or potential consumers of the defendant and (4) the plaintiff suffered injury in fact to a legally protected interest that was (5) caused by the defendant's challenged practice. *Wheeler v. T.L. Roofing, Inc.*, 74 P.3d 499, 506 (Colo. App. 2003). "[T]hird-party non-consumers have standing to bring actions under the CCPA," so long as they can show an injury in fact to a legally protected right. *Walter v. Hall*, 940 P.2d 991, 998 (Colo. App. 1996); *Wimberly v.*

groundless if the allegations of the complaint, although sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence" or if the "proponent has a valid legal theory, but can offer little or no evidence to support the claim." *Wheeler*, 74 P.3d at 505. Where "a party persists in pursuing a claim, despite knowing that it lacks admissible evidence to support that claim, the claim may properly be characterized as substantially groundless and the party's conduct, as substantially vexatious." *Consumer Crusade, Inc. v. Clarion Mortgage Capital, Inc.*, 197 P.3d 285, 291 (Colo. App. 2008) (internal citations omitted).

In its amended complaint, General Steel alleged that Armstrong violated the CCPA by using a misleading sales script, issuing press releases containing false information, and making false statements about the size and nature of Armstrong's business in advertisements. Docket No. 21 at 16-18, ¶¶ 78-81. General Steel alleged that the "above-described acts and conduct of Defendants have injured General Steel," but did not set forth any additional information regarding its purported injury. *Id*. at 19, ¶ 85. In the course of discovery, General Steel indicated that it was seeking compensation on its CCPA claim in the form of disgorgement of Armstrong's profits from the alleged deceptive trade practices, without further characterizing the nature of its injury. *See, e.g.*, Docket No. 357-1 at 6; Docket No. 357-4 at 5; Docket No. 357-5 at 7.

In response to Armstrong's motion for summary judgment on its CCPA claim, General Steel stated:

---

*Ettenberg*, 194 Colo. 163, 168 (1977).

> Plaintiff has been gravely injured; it merely seeks damages measured by Defendants' revenues rather than by losses measured by its own economic data points. A triable issue is presented where a litigant can show the mere existence of damage. *Roberts v. Adams*, 47 P.3d 690, 696-97 (Colo. App. 2002); *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1024 (Colo. App. 1993). It is not fatal to a claim that the exact amount of damages may be uncertain or impossible to determine. *Id.*

Docket No. 114 at 19 (emphasis in original). General Steel did not, however, substantiate "the mere existence of damage," nor did it submit "substantial evidence, which together with reasonable inferences to be drawn therefrom provides a reasonable basis for computation of the damage," as required by the cases it cited. *See Roberts*, 47 P.3d at 697 (internal citations omitted); *Graphic Directions*, 862 P.2d at 1024. The Court concluded that General Steel had "identified a *theory* of recovery, i.e., disgorgement of Armstrong's profits," but "failed to identify evidence that it in fact suffered any injury supporting an award of damages." Docket No. 233 at 3. Since General Steel's allegation of an injury-in-fact, a key element of its CCPA claim, was "not supported by any credible evidence," the Court concludes that the claim was groundless. *See Wheeler*, 74 P.3d at 505.

However, an award of fees under the CCPA requires a finding of both groundlessness and bad faith or an intention to harass.[3] *See Sierra v. Stonebridge Life*

---

[3]Armstrong relies on *Consumer Crusade, Inc. v. Clarion Mortg. Capital, Inc.*, 197 P.3d 285 (Colo. App. 2008), for the proposition that the imposition of fees is warranted where a plaintiff fails to produce evidence in support of a necessary element of her claim. Docket No. 357 at 18-19, ¶ 22. However, *Consumer Crusade* concerned fees awarded pursuant to Colo. Rev. Stat. § 13-17-102(4), which permits an award of fees upon a finding that an action, "or any part thereof," was "substantially frivolous, substantially groundless, or substantially vexatious." In contrast, the CCPA permits an award of fees only upon a finding that the claim was both "groundless *and* in bad faith or for the purpose of harassment." Colo. Rev. Stat. § 6-1-113(3) (emphasis added). The CCPA's conjunctive standard combines both an objective and a subjective

*Ins. Co.*, No. 10-cv-03123-PAB-KMT, 2013 WL 5323083, at *5-*6 (D. Colo. Sept. 23, 2013). In support of its contention that General Steel leveraged its CCPA claim for an improper purpose, Armstrong offers (1) an email from an Armstrong customer complaining about a telephone call purportedly from the Colorado Attorney General's office disparaging Armstrong that Assistant Attorney General Jay Simonson denied making, Docket No. 386-1; and (2) a transcription of a voicemail message that Mr. Simonson left for Armstrong attorney, Paul Grant, requesting the number of this case because he "got a call from [General Steel attorney Patrick Frye]" and "[b]oth sides have raised allegations." Docket No. 386-2.

Based on the first document, a reasonable fact-finder could infer, at the most, that an entity other than the Colorado Attorney General's Office made at least one phone call to an Armstrong customer in order to disparage Armstrong. The second attachment indicates that the Attorney General's Office was looking into the particulars of the instant case, having received complaints of an unspecified nature from "both sides." Docket No. 386-2. Taken together, these documents do not establish by any standard that General Steel used its CCPA claim to "(a) segregate any information and documents negatively portraying Defendants and selectively forward such information and documents to the Colorado Attorney General, and (b) contact Armstrong Steel's former and existing customers and portray Armstrong Steel negatively in an effort to disrupt and adversely affect Armstrong Steel's business." Docket No. 357 at 18, ¶ 22. Nor does the Court find that General Steel's "evidence and argument were so feckless

---

component.

or irrational that [the] continued pursuit of [its] CCPA claim must have been motivated by bad faith or a purpose to harass." *See Campfield v. State Farm Mut. Auto. Ins. Co.*, No. 03-cv-00306-REB-BNB, 2007 WL 2688857, at *1 (D. Colo. Sept. 12, 2007).

In sum, defendants have not shown that General Steel's CCPA claim was maintained in bad faith or with an eye to harassing defendants and thus attorney's fees are not available under the CCPA.

### III. CONCLUSION

As General Steel has not prevailed on its motion for attorney's fees, the Court need not consider General Steel's request to supplement that motion or defendants' corresponding motion to strike. For the foregoing reasons, it is

**ORDERED** that the Motion for Award of Attorneys' Fees filed by plaintiff General Steel Domestic Sales, LLC [Docket No. 354] is DENIED. It is further

**ORDERED** that the Motion for Leave to Supplement Motion for Award of Attorneys' Fees [Docket No. 355] filed by General Steel is DENIED as moot. It is further

**ORDERED** that Defendants' Motion to Strike Plaintiff's Expert Report or for Alternative Relief [Docket No. 391] is DENIED as moot. It is further

**ORDERED** that Defendants' Motion for Award of Attorney's Fees and Costs Pursuant to Fed. R. Civ. P. 54(d)(2) and D.C.Colo.LCivR 54.3 [Docket No. 357] is DENIED.

DATED February 27, 2014.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge