FILED
United States Court of Appeals
Tenth Circuit

July 31, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GENERAL STEEL DOMESTIC
SALES, LLC, d/b/a General Steel
Corporation, a Colorado limited
liability company,

    Plaintiff-Appellant/Cross-
    Appellee,

v.

ETHAN DANIEL CHUMLEY,
individually; ATLANTIC BUILDING
SYSTEMS, LLC, a Delaware
corporation, d/b/a Armstrong Steel
Corporation,

    Defendants-Appellees/Cross-
    Appellants.

Nos. 14-1119 and 14-1121
(D.C. No. 1:10-CV-01398-PAB-KLM)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **GORSUCH**, and **MATHESON**, Circuit Judges.

---

Most everyone expects a little audacity — maybe even a little mendacity — in their advertising. Sometimes it can even prove amusing. Like the local greasy spoon's boast that it pours the "world's best cup of coffee." Or the weight loss

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

company's promise that its miracle pill will "literally melt the pounds away." But sometimes advertising crosses the line from harmless hyperbole into underhanded deception with material commercial consequences. That's when laws like the federal Lanham Act step in, allowing those harmed by false advertising to recover for their injuries. In the district court's judgment that's the position General Steel found itself in: entitled to relief under the Act after a campaign of misleading ads by its competitor, Armstrong Steel. Neither by the end of it all can we find any reversible error in that judgment.

*

The trouble began with a disgruntled employee. Ethan Chumley worked as a salesperson for General Steel, a company that sells prefabricated steel buildings directly to consumers. But the relationship eventually soured and, though the parties dispute what led to his termination, everyone agrees the parting was hardly friendly. Before long Mr. Chumley founded Armstrong, a rival in the steel building business, and the company launched an aggressive online marketing campaign.

That's where the lies began. One Internet posting purported to detail Armstrong's community service efforts in the Middle East, offering quotations from the company's Vice President of International Affairs, J.P. Remington, III. The problem? The charity didn't exist. Neither did Mr. Remington. And the false claims didn't stop with phony philanthropy: soon General Steel was in the

crosshairs. Ads on Google, for example, claimed that Armstrong sold "General Steel" buildings. It didn't. The company's website claimed that Armstrong fabricates the steel it uses to assemble its buildings. It doesn't. And one ad on Armstrong's website — entitled "May the Best Building Win" — offered a side-by-side comparison of Armstrong's and General Steel's products and claimed that General Steel provided consumers with fewer options than, in truth, it did.

So it is that General Steel sued, pursuing claims under both the Lanham Act and the Colorado Consumer Protection Act. While the district court granted summary judgment to Armstrong and Mr. Chumley on the Colorado statutory claims, the federal Lanham Act claims survived to a bench trial. There the court found for General Steel and awarded monetary and injunctive relief for three false statements — that Armstrong fabricated its own steel; that Armstrong offered "general steel" buildings for sale; and that General Steel failed to offer pregalvanized steel or stainless fasteners for its buildings. Both sides now appeal. Armstrong and Mr. Chumley challenge the district court's award of relief under the Lanham Act, while General Steel argues that summary judgment was inappropriate on its Colorado statutory claims.

*

We start with Armstrong's appeal. To win a false advertising claim under the Lanham Act, a plaintiff generally must establish among other things that the defendant's commercial advertising contained a false or misleading representation

3

of fact that was likely to cause confusion about the defendant's products or services and that injured the plaintiff. 15 U.S.C. § 1125(a); *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 980 (10th Cir. 2002). Armstrong argues that General Steel failed to demonstrate all of these essential elements and we take each argument in turn.

To show a qualifying false or misleading statement, a plaintiff must demonstrate that the defendant's statement was either (1) literally false or (2) literally true or ambiguous but implicitly false, misleading in context, or likely to deceive. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999); *accord Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999). The district court found the three statements mentioned above — that Armstrong fabricated steel, that Armstrong sold "general steel" buildings, and that General Steel didn't provide pregalvanized steel or stainless fasteners — satisfied the first test because they were literally false. The parties spend much time fighting over the standard of review we should apply to these determinations and whether Armstrong properly preserved all of the arguments for reversal it now advances. But nothing turns on these disputes, for we would affirm the district court even assessing all of Armstrong's arguments and doing so de novo.

Take Armstrong's representation that it fabricated its own steel. The district court held this suggestion literally false because the evidence at trial showed that Armstrong isn't a steel manufacturer but purchases steel from others

and then assembles it into buildings.  Armstrong contends that its statements were at least ambiguous because, when discussing "each piece of steel we fabricate," a reader could've taken the company to mean that it merely supplies buildings made of steel that others fabricate.  But we agree with the district court:  that's just not a plausible reading.  In referring to "each piece of steel we fabricate," Armstrong's ads conveyed not only that the company supplies steel buildings or assembles pieces of steel made by others, but that it fabricates the steel pieces *itself*.  And that much is just not true.

Next come Armstrong's representations that it offered "general steel" buildings for sale.  The district court found these statements literally false because Armstrong wasn't licensed to (and didn't) sell its rival's products.  Again Armstrong claims ambiguity, arguing that its references to "general steel" didn't necessarily mean "Armstrong makes 'General Steel' (*i.e.*, the plaintiff's) buildings" because they could also mean "Armstrong makes 'general' (*i.e.*, all-purpose) steel buildings."  Again, we cannot see how.  There's no credible evidence in the record that the term "general steel" is used in the industry to describe steel buildings sold by anyone else.  Armstrong's ads, meanwhile, included side-by-side comparisons between its products and those offered by the General Steel company.  They even used General Steel's logo and sometimes capitalized "General Steel."  In this light, there's just no doubt what Armstrong's ads were talking about — or that they were literally false.

5

Last in line are Armstrong's statements about "pre-galvanized secondary framing" and "stainless steel fasteners." Armstrong says its advertisements — representing that it provided these accessories where General Steel didn't — were literally true because Armstrong includes these items unless the customer declines them while General Steel doesn't include them unless the customer requests them. But Armstrong's "May the Best Building Win" web advertisements failed to draw any distinctions of this sort. They didn't, for example, compare "standard" features. Instead, they flatly compared features supposedly available in Armstrong buildings against those supposedly available in General Steel buildings. And the ads were literally false because the evidence at trial showed that both companies provide these features at additional cost and that customers can choose whether to purchase them.

Failing to persuade us of error in the district court's falsity analysis, Armstrong next directs our attention to the question of materiality. Though not explicitly mentioned in the text of the Lanham Act, many courts require plaintiffs to prove that a false or misleading advertisement is "likely to influence the purchasing decision" before permitting recovery based on it. *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Avenue*, 284 F.3d 302, 311 (1st Cir. 2002) (quoting *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 33 n.6 (1st Cir. 2000)); *see also* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §§ 27:24 n.1, 27:35 (2015). Circuits that have imposed a materiality

6

requirement are, however, split over who bears the burden of proof: some keep it with the plaintiff while others are willing to presume that at least some misstatements — usually literally false ones — are material. *Compare, e.g.*, *Cashmere & Camel Hair Mfrs. Inst.*, 284 F.3d at 310-11 (keeping the burden with the plaintiffs), *with, e.g.*, *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000) (presuming that a literally false statement is material). This court has yet to decide whether the Lanham Act imposes a materiality inquiry and, if so, the lines that inquiry should follow or the standard we would use to review a district court's materiality determination. But here again this case does not require us to answer these questions.

It doesn't because, on the record before us, we would find one of Armstrong's false statements — that only Armstrong offered pregalvanized steel or stainless fasteners — material under any conceivable standard. That's because Armstrong's own evidence at trial established that the statement was likely to influence consumer purchasing decisions. Armstrong's Chief Operating Officer testified that steel fasteners and pregalvanized framing were important to Armstrong's brand, giving the company a competitive edge and improving the quality of its buildings.

That leaves the other two statements: Armstrong's claim that it fabricated its own steel and sold "general steel" buildings. But here, too, Armstrong fails to provide a basis for reversing the district court's judgment. For while the

7

company didn't concede at trial that these false statements were material to consumer purchasing decisions, the company does accept on appeal the premise that "statements that misrepresent an inherent quality or characteristic of a product" are always material. Appellee/Cross-Appellant's Br. 19-20 (citing *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1032, 1060 (D. Kan. 2006)). The district court found these statements misrepresented inherent qualities of Armstrong's products and thus qualified for the presumption of materiality. On appeal, Armstrong's brief offers no convincing reason why this was error. Maybe such a reason exists, but if it does it hasn't been presented to this court.

Moving past materiality to injury, the argument proceeds this way. The district court found that Armstrong's false statements appear in direct side-by-side comparative advertising. It found, too, that Armstrong made these false statements willfully. Given these two facts, the district court held that it would presume they caused injury to General Steel. In doing so, the court relied on cases that have employed such a presumption "in comparative advertising cases where money damages are sought and where there exists proof of willful deception." *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1336 (8th Cir. 1997); *see also Hutchinson v. Pfeil*, 211 F.3d 515, 522 (10th Cir. 2000). Armstrong accepts this presumption as a matter of law, so we will assume (without deciding) that it is a correct statement of the law. The company argues,

8

however, that the presumption isn't warranted here because, as a factual matter, some of its false statements simply were not made in the course of a comparative advertisement. Yes, they were all found in its "May the Best Building Win" webpage — and, yes, that advertisement expressly compared Armstrong and General Steel products. But Armstrong attaches significance to the fact that two of the three statements at issue were located in small print after side-by-side columnar comparisons between the two brands. And the small print, Armstrong says, is for all practical purposes a separate advertisement unto itself.

    We disagree. Every statement complained of was found on a single web page (no clicking through needed). All followed under the heading "May the Best Building Win" and the logos of General Steel and Armstrong. So Armstrong's suggestion that we should cleave this single piece in two — treating the columns and the small print as separate ads — seems a bit like suggesting we should find two separate ads in the sales pitch at the front end of a thirty-second radio spot and the fast-talking disclaimers at the end — or in the large print at the top of a newspaper ad and the small print at the bottom. Neither does the case on which Armstrong primarily relies, *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, No. CV 09-00565 DDP (RZx), 2011 WL 4852472 (C.D. Cal. Oct. 12, 2011), suggest such an unlikely conclusion. Indeed, the court there didn't attempt to sever a single ad into multiple ones. Instead, it held that the case before it didn't involve a comparative advertisement at all because the defendant's advertising —

however false and misleading — never referred to the plaintiff's product by name. *Id.* at *2. And that's just not a problem we face for, as we've seen, Armstrong's "May the Best Building Win" advertisements expressly referenced General Steel's products.

Moving beyond liability to the question of remedy, the court ordered disgorgement of profits, a move Armstrong doesn't challenge in principle. In calculating the amount of disgorgement, the district court adopted a burden-shifting framework that required General Steel to prove Armstrong's gross profits during the period in question and Armstrong to prove which portion of those profits wasn't attributable to its Lanham Act violations. Armstrong never came forward with the latter type of evidence, and it now argues that the whole burden-shifting endeavor was an improper way to go about figuring the appropriate amount of profits to disgorge.

Once again we cannot agree. The Act's remedial provision says that when a plaintiff proves false advertising or trademark infringement, he is "entitled, . . . subject to the principles of equity, to recover . . . defendant's profits." 15 U.S.C. § 1117(a). The statute goes on: "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.* Pretty plainly this language anticipates the sort of burden shifting the district court applied. Indeed, this framework is routinely used in trademark infringement cases. *See, e.g.*, *Mishawaka Rubber & Woolen*

10

*Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-07 (1942); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993). And many courts have employed it in false advertising cases too. *See, e.g.*, *Merck Eprova AG v. Gnosis S.p.A*, 760 F.3d 247, 251, 261-62 (2d Cir. 2014); *Rexall Sundown, Inc. v. Perrigo Co.*, 707 F. Supp. 2d 357, 359 (E.D.N.Y. 2010); *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 819 (D. Minn. 2011). That shouldn't come as much of a surprise, for not only does the statutory text speak to both sorts of claims in the same voice, it more or less tracks common law remedies for false advertising. At common law, after all, once a plaintiff proved slander per se or libel, general damages were often presumed. *See* 50 Am. Jur. 2d Libel and Slander § 478; Marc A. Franklin & Daniel J. Bussel, *The Plaintiff's Burden in Defamation: Awareness and Falsity*, 25 Wm. & Mary L. Rev. 825, 826 & n.4 (1984).

The cases Armstrong cites in support of its contrary position don't address the propriety of a burden-shifting regime for determining the quantum of monetary relief — let alone reject it. Instead, they stand for the proposition that "unless there is some proof that plaintiff lost sales or profits, or that defendant gained them, the principles of equity do not warrant an award of defendant's profits." *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 695 (6th Cir. 2000); *see also Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 464 (5th Cir. 2001). We don't question the propriety of this principle, only its relevance when it comes to determining not whether monetary relief should be

11

awarded but whether (as here) to employ the statutorily prescribed burden-shifting procedure to ascertain its amount.

Without an argument based in statutory text or precedent, Armstrong at times seems to suggest that employing a burden-shifting process in false advertising cases might create a policy problem that does not arise in trademark infringement cases. Trademark infringement cases involve discrete product lines, the argument goes, so disgorgement of profits can be easily limited to affected lines. But a product line–by–product line analysis is impossible in false advertising cases, so when ordering disgorgement of profits in those cases there's a risk a court will wrongly award disgorgement for product lines unaffected by any wrongdoing.

We just don't see this dichotomy. We have no difficulty imagining a trademark case involving the wrongful use of a mark that affects multiple product lines (for example, if Armstrong had stamped various separate product lines with General Steel's logo). Likewise, we can imagine a false advertising case in which the misstatements are limited to one product line and not others (for example, a car company falsely advertising qualities of its luxury sedan but not its other models). Of course, it very well may be that when ordering disgorgement a district court should (if possible) disaggregate affected and unaffected product lines to avoid overcompensation, whether the case involves trademark infringement or false advertising. But Armstrong doesn't identify any problem of this sort here for it doesn't claim to produce any product line unrelated to its false

advertising. To the contrary, its ads all concerned the steel buildings it sells and, as best we can tell from the record, steel buildings are all it sells.

Armstrong's only other response is to direct us to the Supreme Court's decision in *Mishawaka* and the Ninth Circuit's ruling in *Lindy Pen*. But it's not clear to us how either case helps the company's cause for both endorse the very burden-shifting regime Armstrong challenges, if again in the trademark context. *See Mishawaka*, 316 U.S. at 206 ("Infringement and damage having been found, the Act requires the trade-mark owner to prove only the sales of articles bearing the infringing mark . . . . If it can be shown that the infringement had no relation to profits made by the defendant, . . . the burden of showing this is upon the poacher."); *Lindy Pen*, 982 F.2d at 1408 ("Once the plaintiff demonstrates gross profits, they are presumed to be the result of the infringing activity.").[1]

---

[1] In passing Armstrong suggests another reason why disgorgement here was improper: its representations that it fabricated steel or sold "general steel" buildings didn't appear on the "May the Best Building Win" webpage during the particular period of time covered by the district court's disgorgement order. But the company doesn't dispute that its statement about stainless fasteners *was* on the website during the relevant time. Neither does it dispute that it sponsored Google ads during the relevant period claiming to sell "General Steel" buildings, using capitalization in a clear reference to its rival. So it would still fall to Armstrong to show which of its profits from the relevant time period weren't attributable to false statements that it made in comparative ads. Something it has never attempted to do: it has only attacked the district court's use of the burden-shifting process and never suggested its ability to nullify or reduce the relief the court awarded using that process. Put differently, any challenge under *Lindy Pen* or *Mishawaka* to the court's application of the statutory burden-shifting framework fails because Armstrong never contested or claimed deductions from General Steel's sales data.

*

Having concluded that none of Armstrong's arguments warrants reversal, we turn to General Steel's half of this appeal. Here our analysis can be a good deal briefer. The company argues that the district court erred in granting summary judgment to Armstrong on General Steel's claims under the Colorado Consumer Protection Act. The district court held that, at least at the time of summary judgment, General Steel had failed to come forward with evidence suggesting that it suffered sufficient harm at the hands of Armstrong's deceptive trade practices to give rise to a state law claim. On appeal, General Steel argues that the district court erred by effectively requiring it (as the nonmoving plaintiff) to point to evidence of injury in the record to oppose summary judgment. According to General Steel, Armstrong should have first come forward with affirmative evidence showing a lack of injury.

But these arguments, like the cases General Steel cites to support them, come from a pre-*Celotex* world. The Supreme Court long ago established that a defendant may support its motion for summary judgment on an issue on which the plaintiff bears the burden of proof by arguing that the record lacks any evidence in the plaintiff's favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986). Rule 56 doesn't require that "the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim" — so long as it explains why the record *doesn't* support the opponent's position. *Id.* at 323.

And Armstrong did just that here: its motion for summary judgment explained why General Steel's theories of injury were lacking under Colorado law. General Steel's failure to come forward with any evidence to rebut this argument was thus a real problem, just as the district court held. *See, e.g.*, *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) ("If, however, the moving party does not bear the burden of persuasion at trial, it need not negate the nonmovant's claim. Such a movant may make its prima facie demonstration by pointing out to the court a lack of evidence on an essential element of the nonmovant's claim." (citation omitted)); *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (same).[2]

\*

At this point only a couple of odds and ends remain to tie up. First, General Steel would have us overturn the district court's finding that its CCPA claim was "groundless." But General Steel fails to explain how an alternate

---

[2] In its opening appellate brief General Steel cites an interrogatory response in which it claimed injury. But under Rule 56, that's not enough to survive summary judgment: General Steel had an obligation to come forward with evidence suggesting injury, not a conclusory claim of one. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 674 (10th Cir. 1998) ("Vague, conclusory statements do not suffice to create a genuine issue of material fact."). Neither did General Steel meet its burden by pointing to several receipts for its own advertising expenses, for the company never explained how these costs were associated with any alleged injury. Finally, General Steel's suggestion that it amassed evidence sufficient to support a state law claim *after* summary judgment is of course insufficient to undo the district court's ruling. *See id.* at 671 (noting that our review of a summary judgment disposition is limited to the same record that was before the district court at the time of the judgment's entry).

finding would make any difference. In addressing whether Armstrong is entitled to attorney fees under state law, the district court held that General Steel's CCPA claims were "groundless" but declined to award fees anyway because Armstrong couldn't satisfy other statutory prerequisites. Nor does General Steel suggest that the finding is relevant to some other presently live dispute. Second, Armstrong tells us the district court erred in finding that Mr. Chumley was responsible for creating a website that disparaged General Steel. But the court went on to hold — despite this finding — that Mr. Chumley and Armstrong should win on the trademark and unfair competition claims, the only claims for which this factual finding was relevant. And again Mr. Chumley fails to suggest this finding is relevant to any other live question. Without any explanation how these findings affect anyone's legal rights in these proceedings, or even collateral interests elsewhere, it appears these are but academic questions and for this reason we decline to tangle with them. *Cf. Wyoming v. Dep't of Interior*, 587 F.3d 1245, 1247 (10th Cir. 2009) ("[U]nder Article III of our Constitution federal courts may answer only questions whose resolutions will have an actual effect in the real world.").

    The district court's judgment is affirmed.

                              ENTERED FOR THE COURT

                              Neil M. Gorsuch
                              Circuit Judge